# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 22, 2024          Decided July 22, 2025

No. 22-7104

ISSOUF COUBALY, INDIVIDUALLY AND ON BEHALF OF
PROPOSED CLASS MEMBERS, ET AL.,
APPELLANTS

v.

CARGILL INCORPORATED, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-00386)

———

*Terrence P. Collingsworth* argued the cause and filed the briefs for appellants.

*Ellen Noble* and *Anita Yandle* were on the brief for *amici curiae* Law Professors in support of appellants. *Shelby H. Leighton* entered an appearance.

*Theodore J. Boutrous Jr.* argued the cause for appellees. With him on the briefs were *Perlette Michèle Jura*, *Jacob T. Spencer*, *John E. Hall*, *Henry Liu*, *David M. Zionts*, *John A. Boeglin*, *Emily Johnson Henn*, *Andrew J. Pincus*, *Carmen Longoria-Green*, *Steven A. Zalesin*, *David Forkner*, *Craig A.*

2

*Hoover*, *David M. Foster*, *Danielle Desaulniers Stempel*, *Paul C. Rosenthal*, and *Lauri A. Mazzuchetti*. *Stephanie A. Carroll* entered an appearance.

*Paul Lettow*, *John B. Bellinger, III*, *John P. Elwood*, *Kaitlin Konkel*, and *Sean A. Mirski* were on the brief for *amicus curiae* the Chamber of Commerce of the United States of America in support of appellees.

Before: SRINIVASAN, *Chief Judge*, MILLETT and WALKER, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*: Eight Malian citizens allege that they were forced to work as children on cocoa farms in Côte d'Ivoire. They sued seven cocoa importers on behalf of a putative class. Because their complaint does not allege injuries fairly traceable to the Defendants, the Plaintiffs lack standing to sue in federal court.

**I**

Chocolate requires cocoa beans. They are plucked from the pods of a tree native to the Amazon rainforest. Today, most cocoa beans come from tens of thousands of small farms in West Africa.

A former French colony called Côte d'Ivoire leads West Africa (and the world) in growing cocoa.[1] Its median farm is a

---

[1] *See* Food & Agriculture Organization of the United Nations, Crops & Livestock Products Data, fao.org/faostat/en/#data/QCL (see "Production Quantity" of "Cocoa beans" for all countries in 2023)

3

small five hectares, roughly the size of ten football fields.[2]  An estimated 790,000 children work on those farms, and many of them are enslaved.[3]

Plaintiff Issouf Coubaly was one of them.  Trafficked from Mali to Côte d'Ivoire at age 15, Coubaly worked alone without pay on a small, isolated cocoa farm called Guezouba.  After five years, he managed to return penniless to Mali.

The seven other named Plaintiffs have stories much like Coubaly's.  Traffickers lured them from Mali as children with the promise of well-paying jobs and forced them to work on small cocoa farms in remote regions of Côte d'Ivoire.   After months (for some) and years (for others), each Plaintiff found his way back home.

The Plaintiffs filed a putative class action in the United States District Court against seven cocoa importers: Cargill, Nestlé, Mondelēz, Hershey, Olam, Barry Callebaut, and Mars. They accused those Importers of violating the Trafficking Victims Protection Reauthorization Act.[4]   "The TVPRA creates a civil remedy against any person who 'knowingly benefits . . . from participation in a venture' that violates federal slavery and human trafficking laws."  *Doe 1 v. Apple*

---

(Côte d'Ivoire accounts for 42% of the world's cocoa supply, followed by Ghana at 12%).

[2] One hectare is about 2.5 acres, or roughly two football fields.

[3] *See* Santadarshan Sadhu et al., Assessing Progress in Reducing Child Labor in Cocoa Production in Cocoa Growing Areas of Côte d'Ivoire and Ghana 9-10, (Oct. 2020) (NORC at U. Chicago), https://perma.cc/T6RN-GZZQ.

[4] The complaint also asserts several common law claims.  The Plaintiffs rely on the same theory of standing for these claims as for their TVPRA claims, so we do not discuss them separately.

4

*Inc.*, 96 F.4th 403, 406 (D.C. Cir. 2024) (quoting Pub. L. No. 110-457, § 221, 122 Stat. 5044, 5067 (codified at 18 U.S.C. § 1595(a))); *see* 18 U.S.C. § 1589(b) (crime to "participat[e] in a venture which has engaged in the providing or obtaining of [forced] labor or services").

The Plaintiffs allege that the Importers "are the architects and defenders of the cocoa production system of Côte d'Ivoire." JA 89 ¶ 154. The Importers allegedly "formed, operate and control a cocoa supply chain 'venture' to provide them[selves] with . . . cheap cocoa" harvested by enslaved children. *Id.* (quoting 18 U.S.C. § 1589(b)). And to "delay . . . taking any effective action" against child labor, the Importers allegedly "created and are the leaders of" what the Plaintiffs characterize as a nice-sounding, do-nothing organization called the World Cocoa Foundation. *Id.* at 89-90 ¶ 155.

The Importers moved to dismiss the suit for lack of standing. The district court granted the motion, concluding that the Plaintiffs did not "connect the defendants to any specific cocoa plantations," let alone the plantation on which the Plaintiffs had worked as children. *Coubaly v. Cargill, Inc.*, 610 F. Supp. 3d 173, 180 (D.D.C. 2022). So the complaint's "[g]eneral industry-wide allegations . . . lack the specificity necessary to establish causation with the particularity that Article III requires." *Id.* at 181.

The Plaintiffs appealed, and we held their appeal in abeyance pending the disposition of a somewhat similar case — *Doe 1 v. Apple Inc.*, 96 F.4th 403 (D.C. Cir. 2024). There, former child cobalt miners alleged that American technology companies violated the TVPRA by participating in a supply-chain "venture" that supplied them with Congolese cobalt. *Id.* at 406-08. Last year, we held that the *Apple*

5

plaintiffs had standing but failed to state a claim under the TVPRA. *Id.* at 417.

## II

Article III of the Constitution vests the Judiciary with the power to decide only "Cases" or "Controversies." U.S. Const. art. III, § 2. To present a case or controversy, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Those three elements — injury, causation, and redressability — constitute the "irreducible constitutional minimum" for standing to sue in federal court. *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

This case concerns causation.[5]

## A

Coubaly and the other Plaintiffs must show a "causal connection" between their undisputed injury (forced labor) and the Importers' allegedly unlawful conduct (participation in a "supply chain venture"). *See Lujan*, 504 U.S. at 560; JA 7 ¶ 2 (Plaintiffs' injury), 89-93 ¶¶ 154-58 (Importers' conduct). This "chain of causation may not be attenuated, nor can [the asserted injury] result from the independent action of some third party not before the court." *Apple*, 96 F.4th at 409 (cleaned up); *see also Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024) (underscoring the latter "bedrock principle").

---

[5] "We review the district court's standing determination de novo." *National Council for Adoption v. Blinken*, 4 F.4th 106, 110 n.3 (D.C. Cir. 2021).

6

"Congress has the power to articulate [new] chains of causation." *Apple*, 96 F.4th at 409 (cleaned up). It exercised that power in the TVPRA, "allowing plaintiffs to sue defendants who are involved *indirectly* with slavery" through their "participation in a venture." *Id.* at 410 (cleaned up). The TVPRA's indirect liability for 'participation in a venture' satisfies the constitutional minimum because it mirrors the aiding and abetting liability long established at common law." *Id.* at 411 (quoting 18 U.S.C. § 1589(b)).

At this early stage of the litigation, the Plaintiffs need not *prove* that the Importers "were in fact participating in a venture" — "a question for the merits" that is "not part of the threshold jurisdictional inquiry." *Id.* at 409. Rather, we assume that the Plaintiffs' "view of the statute is correct" — that a commodity's supply chain can be a "venture" under the TVPRA — and that the Plaintiffs "will be successful on the merits." *Id.* But, at the motion-to-dismiss stage, the Plaintiffs still must plausibly "allege facts demonstrating" that their personal injuries are fairly traceable to the Importers' venture. *Spokeo*, 136 S. Ct. at 1547 (cleaned up).

That means that the Plaintiffs' allegations cannot be conclusory. *Kareem v. Haspel*, 986 F.3d 859, 865-66 (D.C. Cir. 2021). We will "not assume" the truth of "general averments and conclusory allegations." *Air Excursions LLC v. Yellen*, 66 F.4th 272, 278 (D.C. Cir. 2023) (cleaned up). Article III requires more "particularized allegations of fact." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

**B**

The Plaintiffs lack standing because they have not "clearly allege[d] facts demonstrating" the causal connection between

7

the Importers' alleged supply chain venture and the Plaintiffs' forced labor. *Spokeo*, 136 S. Ct. at 1547 (cleaned up). This court's decision in *Apple* is not to the contrary. Rather, it confirms our conclusion.

**1**

The Plaintiffs' first mistake is their failure to clearly — or even coherently — define the "venture" in which the Importers allegedly participated. *See* JA 89-93 ¶¶ 154-58. Is it the World Cocoa Foundation — an association of the Importers *themselves*, without "any individual or entity that injured" the Plaintiffs?[6] Or are the Importers "in a venture with each other *and their cocoa suppliers*," who "were responsible for the forced labor and trafficking" of the Plaintiffs?[7] The complaint does not clarify.[8]

Even if we set that aside, the Plaintiffs' complaint does not contain sufficient "factual matter" to render plausible any

---

[6] *See* Appellee's Supp. Br. 6; *see also id.* at 3; *id.* at 13 & n.3 (citing JA 89-90 ¶¶ 154-55).

[7] *See* Appellant's Supp. Br. 11 (emphasis added), 13-14; *see also id.* at 6 (claiming to have "alleged with specificity that the [Importers] are in a . . . 'venture' under the TVPRA *with their cocoa suppliers*" (emphasis added)); Appellant's Br. 29 (the Importers "were in a 'venture' that included their cocoa farmers"); *id.* at 35-36 ("The foundation of [the Importers'] venture with their cocoa suppliers was their supplier agreements." (citing, inter alia, JA 89-93 ¶¶ 154-58)).

[8] *Compare, e.g.*, JA 89 ("The Cocoa Supply Chain Is a 'Venture'"), *and* JA 28-29 ¶¶ 50-51 (alleging that the Importers provided financial support, supplies, and training to local farmers as part of the "exclusive supplier/buyer relationships" that contribute to the Importers' supply chain venture), *with* JA 90 ¶ 155 ("the [World Cocoa Foundation] . . . constitutes . . . a cocoa supply chain 'venture' within the meaning of . . . the TVPRA").

8

causal connection between the Plaintiffs' forced labor and the Importers' purchase of Ivorian cocoa. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see also Air Excursions*, 66 F.4th at 279 (no standing because "complaint supplies no factual support" for allegations necessary to show causation). In other words, the complaint fails to articulate a plausible causal link between the Importers and the specific farms where the Plaintiffs worked.

Nowhere, for instance, does Coubaly plausibly allege that Guezouba, the small farm where he was forced to work, supplied one of the Importers that he sued. Nor does he allege that Guezouba supplied an intermediary company that in turn supplied a specific Importer. *See* JA 71 ¶ 127 (alleging generally that Guezouba was in an "area" of Côte d'Ivoire that "was primarily supplying cocoa to Defendants Nestlé, Cargill and Olam"). The same goes for the other named Plaintiffs and the farms where they worked, only some of which are even identified by name.[9]

---

[9] JA 73 ¶ 130 (Sidiki Bamba worked on a plantation "called 'Karou'" that was "in an area that supplied cocoa to all Defendants"); *id.* at 75 ¶ 133 (Tenimba Djamoutene worked on a "plantation called Yofla near Sinfra," "a major cocoa-producing region . . . [that] was primarily supplying cocoa to Defendants Nestlé, Cargill, Barry Callebaut, and Olam"); *id.* at 77 ¶ 136 (Oudou Ouattara worked on an unnamed plantation in "Divo," "a major cocoa-producing area from which all Defendants obtain cocoa" — but the complaint *also* alleges that this "area" "was primarily supplying cocoa to Defendants Barry Callebaut and Olam, which supplied Defendant Nestlé"); *id.* at 80 ¶ 139-40 (Ousmane Ouattara and Issouf Bagayoko worked on a plantation identified only by the owner's name and its relative proximity to the "small isolated village of Souroudouga" — an "area . . . known as the 'wild west' of the cocoa production areas" where "all the Defendants purchase . . . cocoa"); *id.* at 82-83 ¶ 143

9

At most, the Plaintiffs allege that some farms were in "areas" that "primarily" sold cocoa to certain Importers, and other farms were in "areas" that sold to "all" Importers. *See, e.g.*, JA 72 ¶ 129; 75 ¶ 133, 73 ¶ 130; *see also supra* n.9. That does not plausibly allege that the Importers or their venture caused the Plaintiffs' individual injuries. So it is thin factual support for the Plaintiffs' conclusory allegation that they worked "on farms in Côte d'Ivoire . . . [that] supply cocoa beans to the [Importers]." JA 7 ¶ 2; *cf. Twombly*, 550 U.S. at 556-57 ("an allegation of parallel conduct and a bare assertion of conspiracy will not suffice" to plead a Sherman Act violation). Indeed, their allegations hardly amount to "factual support" at all. *See Air Excursions*, 66 F.4th at 278-79.

The Plaintiffs place much weight on one particular statistic: The Importers buy nearly 70% of Ivorian cocoa. Of course, that statistic does not identify which farm sold to which Importer — or which farm sold to which intermediary that then sold to which Importer. Instead, the Plaintiffs simply say that because the Importers "are responsible for more than 70 percent of the cocoa exported from Côte D'Ivoire, it is *more likely than not* that each Plaintiff was forced to harvest cocoa for one or more of the [Importers] operating within the venture." JA 95 ¶ 164 (emphasis added); *see also* Appellants' Br. 40; Appellants' Reply Br. 19 & n.8; Appellant's Supp. Br. 19-20.

---

(Arouna Ballo worked at an unnamed plantation owned by someone named "Sidibe" about "two hours" by foot from Grabo in an area where "all the Defendants purchase . . . cocoa"); *id.* at 84-85 ¶ 146 (Mohamed Traore worked on an unnamed "plantation near the village of Niama," an "area" that "was primarily supplying cocoa to Defendants Barry Callebaut and Olam, which supplied Defendant Nestlé").

10

To show standing at the motion-to-dismiss stage, the Plaintiffs needed to plausibly allege specific facts showing that the Importers sourced cocoa from the farms where they worked — either directly or through intermediaries. It's not enough to allege only that some Importer might (or might not) have bought cocoa from a farm at a time that a Plaintiff might (or might not) have been forced to work there.

Finally, we note that the Plaintiffs' complaint gestures (vaguely) toward the Importers' "staff and agents operating within Côte d'Ivoire." JA 29 ¶ 51; *see also* JA 9 ¶ 4 (referring to "local buyers, who are employees and/or agents of the [Importers]"). But the complaint offers no facts about these unnamed intermediaries, let alone how they interacted with the farms where the Plaintiffs worked — it merely asserts the legal conclusion of employment and agency. *See Slinski v. Bank of America, N.A.*, 981 F. Supp. 2d 19, 31 (D.D.C. 2013) ("The existence of an agency relationship is a legal conclusion, which the court need not accept unless it is supported by factual allegations."). So here again, without more, the Plaintiffs' complaint does not connect their all-too-real injuries to the Importers.

In conclusion, the Plaintiffs would have Article III standing to sue the Importers if they had plausibly alleged that the Importers sourced cocoa (directly or through an intermediary) from the farms where the Plaintiffs worked. Is there a "possibility" that at least some of the Importers sourced cocoa from those farms? *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Yes. But is it "plausible"? *Id.* (cleaned up). Not on this complaint.

11

**2**

The Plaintiffs' complaint meaningfully differs from the complaint in *Doe 1 v. Apple*.

On the surface, the cases look a lot alike. The *Apple* plaintiffs had engaged in forced labor as children (as here). 96 F.4th at 407. They alleged that large global companies benefitted from their forced labor through a "supply chain venture" (as here). First Amended Complaint at 82 ¶ 110 ("*Apple* Complaint"), *Doe 1 v. Apple*, No. 19-cv-03737 (D.D.C. Nov. 2, 2021); *Apple*, 96 F.4th at 408, 416. And they sued those companies under the TVPRA (as here). 96 F.4th at 406.

But in *Apple*, the plaintiffs plausibly alleged that the defendants sourced cobalt from the very suppliers who benefitted from the plaintiffs' forced labor. So a direct line ran from all the defendants, through their suppliers, to all the plaintiffs.[10] To take James Doe 1 as just one example, the *Apple* complaint (1) identified the mine where James Doe 1 worked, (2) identified the company that owned and controlled the subsidiary that operated the mine, and (3) plausibly alleged that this company ultimately supplied cobalt to each defendant

---

[10] *See* 96 F.4th at 411 ("plaintiffs have demonstrated causation because they have alleged the Tech Companies are in a 'venture' . . . with Glencore, Huayou, Eurasian Resources, and their [local] subsidiaries who are responsible for the forced labor"); *id.* at 408 ("Each miner in the case was injured or killed at a mine operated by a subsidiary of Glencore, Huayou, or Eurasian Resources. . . . [T]hese companies supply cobalt to the Tech Companies."); *id.* at 411-12 (underscoring the tech companies' "business relationship[s] with the offending cobalt suppliers").

12

(via clearly identified intermediaries). *See Apple* Complaint at 24-25 ¶ 30.[11]

By contrast, the *Coubaly* complaint against the Importers (1) does not identify all the farms where the Plaintiffs worked, (2) does not fully identify the farmers who owned and controlled those farms, and (3) does not plausibly allege that those (largely unidentified) farmers supplied cocoa to any of the Importers (or any clearly identified intermediaries). *See* JA 70-89 ¶¶ 127-153. In other words, the Plaintiffs have not plausibly alleged that the Importers sourced cocoa from the farms where the Plaintiffs worked — unlike in *Apple*, where the complaint connected the tech-company defendants to the specific mines where the plaintiffs worked. 96 F.4th at 406-08, 411-12; *see infra* Appendix B.

We recognize that the *Apple* plaintiffs had standing even though they did not connect the defendants to the specific *cobalt* mined by the plaintiffs. *See* 96 F.4th at 409-12. But the *Apple* plaintiffs did connect the defendants to the *sellers* of cobalt mined by the plaintiffs. *Id.* Likewise, in today's case, Article III does not require the Plaintiffs to plausibly allege facts connecting the Importers to the specific *cocoa* harvested by the Plaintiffs. But, at this procedural juncture, Article III does require the Plaintiffs to plausibly allege facts showing that their own injuries can be fairly traced to the Importers' venture.[12]

---

[11] The *Apple* complaint did the same for each of the sixteen named plaintiffs. *See* Appendix B.

[12] The diagrams in Appendix A highlight the critical difference between *Apple* and this case. To be clear, the *Apple* chart simplifies things a bit. In *Apple*, the defendants' suppliers operated through subsidiaries that owned mines or mineral rights; certain suppliers

13

**III**

The Plaintiffs in this case deserve the greatest sympathy, and the people who took away their childhoods deserve the greatest condemnation.  But the Plaintiffs did not plausibly allege a connection between those people and the Importers. The Plaintiffs therefore lack standing to sue the Importers.

We affirm the district court's dismissal of the Plaintiffs' complaint.

*So ordered.*

---

supplied only certain defendants; and certain defendants received cobalt through a chain of multiple intermediaries.  *See* Appendix B. But those nuances do not negate this key point: Unlike the complaint in today's case, the *Apple* complaint plausibly alleged that the defendants had direct or intermediated commercial relationships with suppliers who were responsible for the plaintiffs' forced labor.

14

## Appendix A

### *Doe 1 v. Apple*



### *Coubaly v. Cargill*



15

**Appendix B**

*Apple* Complaint Traceability Allegations

| Plaintiffs | Mine & Intermediaries | Defendants |
|---|---|---|
| James Doe 1<br>John Doe 7 | Worked at Mashhamba East Mine → which is operated by Kamoto Copper Company (KCC) → which is owned and controlled by Glencore → which sells to Umicore → which sells to defendants Apple, Alphabet, and Microsoft → and to LG Chem → which supplies defendants Dell and Tesla. *See* First Amended Complaint at 24-25 ¶ 30, 42 ¶ 45, *Doe 1 v. Apple*, No. 19-cv-03737 (D.D.C. Nov. 2, 2021). | Apple<br>Alphabet<br>Microsoft<br>Dell<br>Tesla |
| John Doe 1<br>John Doe 8<br>John Doe 11 | Worked at Lac Malo B5 mine → which is operated by KCC → which is owned and controlled by Glencore → which sells to Umicore → which sells to defendants Apple, Alphabet, and Microsoft → and to LG Chem → which supplies defendants Dell and Tesla. *See id.* at 26 ¶ 32, 44 ¶ 47, 51 ¶ 55. | Apple<br>Alphabet<br>Microsoft<br>Dell<br>Tesla |

16

| Plaintiffs | Mine & Intermediaries | Defendants |
|---|---|---|
| James Doe 2<br>James Doe 3<br>James Doe 12<br>John Doe 4<br>John Doe 6<br>John Doe 9<br>Joshua Doe 2 | Recruited by Coopérative Minière Maadini kwa Kilimo → a cooperative controlled by Glencore → to work at Tilwezembe mine → where Glencore owns the mineral rights → and Glencore sells to Umicore → which sells to defendants Apple, Alphabet, and Microsoft → and to LG Chem → which supplies defendants Dell and Tesla. *See id.* at 28-29 ¶¶ 34-36, 33-34 ¶¶ 38-39, 37-42 ¶¶ 41-44, 46-48 ¶¶ 49-50, 53-55 ¶¶ 58-59, 55-56 ¶¶ 61-62. | Apple<br>Alphabet<br>Microsoft<br>Dell<br>Tesla |
| John Doe 3<br>John Doe 5 | Worked at a mine operated and controlled by Congo Dongfang Mining → a subsidiary of Zhejiang Huayou Cobalt → which sells to defendants Apple, Dell, and Microsoft. *See id.* at 30 ¶ 37, 35 ¶ 40. | Apple<br>Dell<br>Microsoft |
| John Doe 10 | Worked at Kamilombe No. 1 mine → which is operated by Taruga Minerals → with a concession owned by KCC → which is owned and controlled by Glencore → which sells to Umicore → which sells to defendants Apple, Alphabet, and Microsoft → and to LG Chem → which supplies defendants Dell and Tesla. *See id.* at 49-50 ¶ 53. | Apple<br>Alphabet<br>Microsoft<br>Dell<br>Tesla |
| John Doe 13 | Worked at the Metalkol SA mine → which is owned by the Eurasian Resources Group → which supplies defendant Tesla. *See id.* at 57 ¶ 64. | Tesla |