ORAL ARGUMENT NOT YET SCHEDULED

No. 22-7104

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

ISSOUF COUBALY et al.,
Plaintiffs-Appellants,

v.

CARGILL INCORPORATED et al.,
Defendants-Appellees.

_____

On Appeal from the United States District Court
for the District of Columbia, No. 1:21-CV-00386-DLF
Before the Honorable Dabney L. Friedrich

_____

RESPONSE BRIEF OF DEFENDANTS-APPELLEES
_____

Theodore J. Boutrous Jr.
Perlette Michèle Jura
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000
tboutrous@gibsondunn.com

Jacob T. Spencer
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, DC 20036

*Counsel for Nestlé USA, Inc.*

*Additional Counsel Listed on Inside Cover*

John E. Hall
Henry Liu
David M. Zionts
John A. Boeglin
COVINGTON & BURLING LLP
One CityCenter
850 10th Street, NW
Washington, DC  20001
(202) 662-6000

Emily Johnson Henn
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA  94306
(650) 632-4700

*Counsel for Barry Callebaut USA*

Andrew J. Pincus
Carmen Longoria-Green
MAYER BROWN LLP
1999 K Street, NW
Washington, DC  20006
(202) 263-3000

*Counsel for Cargill, Incorporated and Cargill Cocoa*

Daniel S. Ruzumna
Steven A. Zalesin
Jonah M. Knobler
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036
(212) 336-2000

*Counsel for The Hershey Company*

David Forkner
WILLIAMS & CONNOLLY LLP
680 Maine Ave., SW
Washington, DC  20024
(202) 434-5000

*Counsel for Mars, Incorporated and Mars Wrigley Confectionary US, LLC*

Craig A. Hoover
David M. Foster
Danielle Desaulniers Stempel
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC  20004
(202) 637-5694

*Counsel for Mondelēz International, Inc.*

Paul C. Rosenthal
KELLEY DRYE & WARREN LLP
3050 K Street NW, Suite 400
Washington, DC  20007
(202) 342-8400

Lauri A. Mazzuchetti
KELLEY DRYE & WARREN LLP
One Jefferson Road
Parsippany, NJ  07054
(973) 503-5900

*Counsel for Olam Americas LLC (f/k/a Olam Americas, Inc.)*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A. Parties and Amici.** Except for the following, all parties, intervenors, and amici appearing before the district court and in this Court are listed in the Brief for Plaintiffs-Appellants:

<u>Amici for Plaintiffs-Appellants</u>

- William J. Aceves, California Western School of Law;

- William D. Araiza, Brooklyn Law School;

- William C. Banks, Syracuse University College of Law;

- Terry Coonan, Florida State University College of Law;

- Aaron Fellmeth, Sandra Day O'Connor College of Law;

- Martin S. Flaherty, Fordham Law School;

- Myriam E. Gilles, Cardozo School of Law;

- Dina Francesca Haynes, New England Law;

- Michael J. Kelly, Creighton University School of Law;

- Peter Margulies, Roger Williams University School of Law;

- Beth Stephens, Rutgers Law School; and

- Rachel E. VanLandingham, Southwestern Law School.

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendants-Appellees state the following:

Barry Callebaut USA LLC is a corporate subsidiary wholly and indirectly owned by Barry Callebaut AG, a company incorporated under the laws of Switzerland.  No publicly-held corporation currently owns 10% or more of the stock of Barry Callebaut AG.

Cargill, Incorporated is a domestic corporation, the shares of which are not publicly traded.  No publicly traded company owns 10% or more of its common stock.  "Cargill Cocoa" is named as a defendant in the complaint, but there is no such legal entity.  The legal entity served by Plaintiffs is Cargill Cocoa & Chocolate, Inc., which is a wholly-owned subsidiary of Cargill, Incorporated.

The Hershey Company is a publicly traded company (NYSE: HSY).  It has no parent company and no publicly held company owns 10% or more of its stock.

Mars, Incorporated is a privately held company that has no parent company, and no publicly held company owns 10% or more of its stock.  Mars Wrigley Confectionery US, LLC is a privately held company whose ultimate parent corporation is Mars, Incorporated.  No publicly held company owns 10% or more of the stock of Mars Wrigley Confectionery US, LLC.

Mondelēz International, Inc. is a publicly traded company.  There are no parent companies, subsidiaries, affiliates, or companies which own at least 10% of the stock of Mondelēz International, Inc. which have any outstanding securities in the hands of the public.

Nestlé USA, Inc. is a wholly owned corporate subsidiary of Nestlé Holdings, Inc., which is itself a wholly owned corporate subsidiary of NIMCO US, Inc., which is itself a wholly owned corporate subsidiary Nestlé US Holdco, Inc., which is itself a wholly owned corporate subsidiary of Société des Produits Nestlé S.A., which it itself a wholly owned subsidiary of Nestlé S.A., a publicly traded Swiss corporation, the shares of which are traded in the United States in the form of American Depository Receipts. No publicly held corporation currently owns 10% or more of the stock of Nestlé S.A.

Olam Americas LLC (formerly known as Olam Americas, Inc.) is wholly owned by Olam US Holdings Inc., which is wholly owned by Olam Holdings Inc., which is wholly owned by Olam Holdings BV Netherlands (a company incorporated in the Netherlands), which is a wholly owned subsidiary of Olam International Limited (a Singapore registered company). No publicly-held corporation currently owns 10% or more of the stock of Olam Americas LLC.

**B. Ruling Under Review.** Plaintiffs-Appellants seek review of the June 28, 2022 Order on Motion to Dismiss and the accompanying Memorandum & Opinion granting Defendants-Appellees' joint motion to dismiss issued by the Honorable Judge Dabney L. Friedrich of the United States District Court for the District of Columbia in Civil Action No. 1:21-cv-00386-DLF.

**C. Related Cases.** Counsel are unaware of any related case involving substantially the same parties and the same or similar issues.

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

INTRODUCTION ....................................................................................... 1

JURISDICTION........................................................................................... 5

STATEMENT OF THE ISSUES.................................................................. 5

STATUTES .................................................................................................. 6

STATEMENT OF THE CASE .................................................................... 6

    A.    Statutory Background........................................................... 6

    B.    The Complaint's Allegations ............................................... 7

    C.    The District Court's Ruling.................................................. 12

SUMMARY OF ARGUMENT ................................................................... 14

ARGUMENT .............................................................................................. 16

I.    The District Court Correctly Held That Plaintiffs Lack Article III Standing ............................................................................................ 16

    A.    Plaintiffs' Alleged Injuries Are Not Fairly Traceable To Any Defendant's Alleged Conduct. .......................................... 18

    B.    Plaintiffs' "Venture" Theory Does Not Establish Article III Standing ........................................................................... 26

    C.    Plaintiffs Lack Standing To Pursue Injunctive Relief ....................... 35

II.    Alternatively, The Complaint Does Not State A Claim For Relief ............. 37

    A.    The Complaint Does Not Adequately Plead That Defendants "Participat[ed] In A Venture" Under The Trafficking Act ................ 37

        1.    "Participation in a venture" means taking part in a common undertaking involving shared risk and profit ............. 38

2.    The complaint does not plead a "venture" under the Act.........41

3.    The complaint does not allege that Defendants "participated" in a venture .........................................................47

B.    The Trafficking Act's Civil Cause Of Action Does Not Apply Extraterritorially ...................................................................51

C.    The Complaint Does Not Adequately Plead Its Common Law Claims..................................................................................52

CONCLUSION .........................................................................................57

ADDENDUM OF PERTINENT STATUTES ..................................Add.1

# TABLE OF AUTHORITIES

**Page(s)**

C ASES

*A.B. v. Hilton Worldwide Holdings Inc.*,
   484 F. Supp. 3d 921 (D. Or. 2020) ............................................................28, 40

*A.D. v. Wyndham Hotels & Resorts, Inc.*,
   2020 WL 8674205 (E.D. Va. July 22, 2020).......................................................44

*Al-Tamimi v. Adelson*,
   916 F.3d 1 (D.C. Cir. 2019) ..............................................................................53

*Alexander v. AmeriPro Funding, Inc.*,
   848 F.3d 698 (5th Cir. 2017) ..............................................................................47

*Arpaio v. Obama*,
   797 F.3d 11 (D.C. Cir. 2015) ......................................................................17, 18

*In re Asacol Antitrust Litig.*,
   907 F.3d 42 (1st Cir. 2018).................................................................................22

*Aston v. Johnson & Johnson*,
   248 F. Supp. 3d 43 (D.D.C. 2017) .....................................................................54

*Autolog Corp. v. Regan*,
   731 F.2d 25 (D.C. Cir. 1984) .............................................................................30

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................42, 44

*Bennett v. Spear*,
   520 U.S. 154 (1997)................................................................................18, 24, 25

*Bistline v. Parker*,
   918 F.3d 849 (10th Cir. 2019) ...........................................................................45

*Est. of Boyland v. U.S. Dep't of Agric.*,
   913 F.3d 117 (D.C. Cir. 2019)........................................................................3, 34

*Boyle v. United States*,
   556 U.S. 938 (2009).............................................................................................46

*BP P.L.C. v. Mayor & City Council of Baltimore*,
   141 S. Ct. 1532 (2021)........................................................................................38

*Chubirko v. Better Bus. Bureau of S. Piedmont, Inc.*,
   763 F. Supp. 2d 759 (W.D.N.C. 2011) ..............................................................42

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ............................................................................36

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ......................................................................23, 24

*Disability Rights S.C. v. McMaster*,
24 F.4th 893 (4th Cir. 2022) ...........................................................17

*Doe #1 v. Red Roof Inns, Inc.*,
21 F.4th 714 (11th Cir. 2021) ........................... 15, 38, 39, 40, 41, 45, 46, 48, 50

*Doe I v. Apple Inc.*,
2021 WL 5774224 (D.D.C. Nov. 2, 2021) ...........................................41, 51, 52

*Elec. Privacy Info. Ctr. v. IRS*,
910 F.3d 1232 (D.C. Cir. 2018) ......................................................37

*Exhaustless Inc. v. FAA*,
931 F.3d 1209 (D.C. Cir. 2019) ......................................................36

*Fla. Audubon Soc'y v. Bentsen*,
94 F.3d 658 (D.C. Cir. 1996) ......................................................16, 26

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
204 F.3d 149 (4th Cir. 2000) .........................................................29

*Friends of the Earth, Inc v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ......................................................................35, 36

*Fulani v. Brady*,
935 F.2d 1324 (D.C. Cir. 1991) ......................................................36

*Gerlich v. U.S. Dep't of Justice*,
659 F. Supp. 2d 1 (D.D.C. 2009) ....................................................36

*Halberstam v. Welch*,
705 F.2d 472 (D.C. Cir. 1983) .........................................................29

*Henao v. Smiths Detection, Inc.*,
2019 WL 2476631 (D.D.C. June 13, 2019) .....................................53

*HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*,
141 S. Ct. 2172 (2021) ...................................................................40

*J.L. v. Best W. Int'l, Inc.*,
521 F. Supp. 3d 1048 (D. Colo. 2021) .............................................40

*Jesner v. Arab Bank, PLC*,
138 S. Ct. 1386 (2018) ...................................................................43

*Kareem v. Haspel*,
    986 F.3d 859 (D.C. Cir. 2021)..............................................................25

*Kellogg Brown & Root Servs. v. United States ex rel. Carter*,
    575 U.S. 650 (2015)...............................................................................51

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)...............................................................17, 18, 23

*Mastafa v. Australian Wheat Board*,
    2008 U.S. Dist. LEXIS 73305 (S.D.N.Y. Sept. 25, 2008) .................30

*Merriam v. Demoulas*,
    2013 WL 2422789 (D. Mass. June 3, 2013)........................................28

*Morrison v. Nat'l Australia Bank*,
    561 U.S. 247 (2010)...............................................................................52

*Nat. Res. Def. Council, Inc. v. Watkins*,
    954 F.2d 974 (4th Cir. 1992) ................................................................29

*Nestlé USA, Inc. v. Doe*,
    141 S. Ct. 1931 (2021)...........................................................................43

*News World Commc'ns, Inc. v. Thompsen*,
    878 A.2d 1218 (D.C. 2005) .............................................................53, 54

*Paavola v. United States*,
    459 F. Supp. 3d 21 (D.D.C. 2020)........................................................55

*Parker v. District of Columbia*,
    478 F.3d 370 (D.C. Cir. 2007)..............................................................34

*Prosser v. Fed. Agric. Mortg. Corp.*,
    593 F. Supp. 2d 150 (D.D.C. 2009)......................................................24

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)...............................................................................49

*RJR Nabisco, Inc. v. European Cmty.*,
    579 U.S. 325 (2016)...........................................................................51, 52

*Shaw v. Nissan N. Am.*,
    220 F. Supp. 3d 1046 (C.D. Cal. 2016) ...............................................46

*Sierra Club v. Jackson*,
    648 F.3d 848 (D.C. Cir. 2011)..............................................................37

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*,
    73 F.3d 546 (5th Cir. 1996) ..................................................................29

*Slinski v. Bank of Am., N.A.*,
  981 F. Supp. 2d 19 (D.D.C. 2013).....................................................55

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)..........................................3, 17, 31, 32, 33

*Steorts v. Am. Airlines, Inc.*,
  647 F.2d 194 (D.C. Cir. 1981)........................................................53

*Baloco ex rel. Tapia v. Drummond Co.*,
  640 F.3d 1338 (11th Cir. 2011) .....................................................28

*Tax Analysts & Advocs. v. Blumenthal*,
  566 F.2d 130 (D.C. Cir. 1977)........................................................33

*Tidler v. Eli Lilly & Co.*,
  851 F.2d 418 (D.C. Cir. 1988)........................................................22

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021).....................................3, 13, 31, 32, 33, 34, 35

*Turaani v. Wray*,
  988 F.3d 313 (6th Cir. 2021) ....................................................18, 22

*UFCW Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*,
  719 F.3d 849 (7th Cir. 2013) .........................................................46

*United States v. Afyare*,
  632 F. App'x 272 (6th Cir. 2016) .............................................49, 50

*United States v. Papagno*,
  639 F.3d 1093 (D.C. Cir. 2011).............................................39, 47, 49

*Warth v. Seldin*,
  422 U.S. 490 (1975).........................................................17, 21, 23

*White v. Wash. Intern Student Hous.*,
  2019 WL 1858298 (D.D.C. Apr. 25, 2019).....................................53

*Wood v. Neuman*,
  979 A.2d 64 (D.C. 2009) .................................................................56

*Zamora v. FIT Int'l Grp.*,
  834 F. App'x 622 (2d Cir. 2020) ....................................................46

**STATUTES**

15 U.S.C. § 78j..................................................................................52

18 U.S.C. § 1581 ..................................................................6, 37

18 U.S.C. § 1583 ......................................................................6

18 U.S.C. § 1584 ......................................................................6

18 U.S.C. § 1589 ..............................................................6, 11, 21, 43

18 U.S.C. § 1590 ..................................................................11, 43

18 U.S.C. § 1591 ..................................................................40, 46

18 U.S.C. § 1595 ........................... 1, 5, 6, 7, 8, 9, 10, 16, 37, 38, 40, 45, 46, 51, 52

18 U.S.C. § 1596 ..................................................................5, 51

22 U.S.C. § 7101 ..................................................................6, 37

28 U.S.C. § 1291 ......................................................................5

28 U.S.C. § 1331 ......................................................................5

28 U.S.C. § 1332 ......................................................................5

28 U.S.C. § 1367 ......................................................................5

D.C. Code § 12-301 ..................................................................53

Pub. L. No. 106-386, 114 Stat. 1464 (2000) ..........................................6

Pub. L. No. 108-193, 117 Stat. 2875 (2003) ..........................................6

## RULE

Fed. R. Civ. P. 12 ....................................................................37

## OTHER AUTHORITIES

Am. Heritage Dictionary of the English Lang. (4th ed. 2000) ..........................38, 39

Black's Law Dictionary (7th ed. 1999) ..............................................38, 39

WCF, Our Members,
    https://www.worldcocoafoundation.org/about-wcf/members/ ..........................42

**GLOSSARY**

| | |
|---|---|
| JA | Joint Appendix |
| RICO | Racketeering Influenced and Corrupt Organizations Act |
| Trafficking Act | William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457 |

## INTRODUCTION

The Trafficking Victims Protection Reauthorization Act ("Trafficking Act") permits victims of trafficking, forced labor, and other crimes to sue "the perpetrator[s]" of those crimes as well as those who knowingly benefited "from participation in a venture" that they knew or should have known committed those crimes. 18 U.S.C. § 1595(a). Plaintiffs here are citizens of Mali. They allege that, as minors, they were trafficked to and forced to work on unspecified cocoa farms located in various regions of Côte d'Ivoire.

Plaintiffs did not sue the individuals who trafficked them or forced them to work. Instead, Plaintiffs sued Defendants—U.S. companies that purchase cocoa grown in Côte d'Ivoire—asserting claims under the Trafficking Act and common law. But Plaintiffs do not allege that the individuals who brought them to Côte d'Ivoire or who forced them to work at cocoa farms had any relationship with any Defendant. They do not allege even that any Defendant purchased cocoa originating from the specific farms where they worked. Rather, Plaintiffs allege that, by continuing to purchase Ivorian-grown cocoa when forced labor had not been fully eradicated in Côte d'Ivoire, Defendants knowingly benefited from "participation in a venture" that committed forced labor and trafficking crimes against Plaintiffs.

The district court correctly dismissed the complaint, holding that Plaintiffs lack standing because Plaintiffs' injuries are not fairly traceable to any Defendant's

conduct.  First, the complaint does not link any Defendant "to any specific cocoa plantatio[n]," much less to the farms where Plaintiffs worked.  JA116.  And its generalized allegations do not "establish a non-speculative relationship"—even an attenuated one—"between each [P]laintiff and each [D]efendant."  *Id.*

Second, even if Plaintiffs had alleged that cocoa from the farms where Plaintiffs worked ultimately was sold to Defendants, they lack standing for the independent reason that "the complaint does not adequately explain what role intermediaries played in the supply chain" between sales by those farms and purchases by Defendants.  JA117.  The complaint recognizes that cocoa produced on individual Ivorian farms flows through multiple local intermediaries before being sold to end-purchasers.  Yet it does not adequately allege any relationship between Defendants and those local intermediaries, much less support a plausible inference that, notwithstanding those independent intermediaries, Plaintiffs' injuries could be linked to Defendants' purchases.

On appeal, Plaintiffs do not seriously dispute the district court's conclusions regarding the complaint's failure to plausibly allege causation.  Instead, they fault the district court for basing its standing analysis on the complaint's factual allegations.  According to Plaintiffs, because the complaint makes a conclusory assertion that Defendants "participat[ed] in a venture" within the meaning of the Trafficking Act, the district court was required to assume that their legal theory was correct and

2

therefore conclude that their injuries are necessarily fairly traceable to every Defendant.

There is no merit to this argument. The Supreme Court has twice rejected the proposition that a plaintiff automatically satisfies Article III's requirements merely by asserting a claim for relief under federal law. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021); *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). Congress can "articulate chains of causation that will give rise to a case or controversy where none existed before," *Spokeo*, 578 U.S. at 341, but there must be an actual, fairly traceable "chai[n] of causation" in the *real-world* sense before Congress can elevate it to *legal* significance. And this Court has rejected Plaintiffs' view that it must "accept their 'legal theory' when [it] evaluate[s] their standing." *Est. of Boyland v. U.S. Dep't of Agric.*, 913 F.3d 117, 124 (D.C. Cir. 2019). The cases on which Plaintiffs rely instead "stand for the narrower proposition that a 'party need not *prove* that the . . . action it attacks is unlawful . . . in order to have standing to level that attack.'" *Id.* (citation omitted; omissions in original). The district court's routine application of standing precedent was consistent with those principles—and entirely correct.

Even apart from Plaintiffs' lack of standing, Plaintiffs fail to state a claim under the Trafficking Act or common law. As Plaintiffs concede, each Defendant can be held liable only if it "participat[ed] in a venture" that engaged in the traffick-

3

ing or forced labor offenses that harmed Plaintiffs. Plaintiffs allege a sprawling "cocoa supply chain" venture that includes every person or entity involved in the production, supply, and purchase of cocoa from Côte d'Ivoire. But the complaint does not plead facts indicating that those individuals and entities worked collectively as a part of a single venture engaged in trafficking and forced labor. And even if Plaintiffs had plausibly alleged the existence of a venture, the mere purchase of cocoa from Côte d'Ivoire does not constitute "participation" under the ordinary meaning of the term. Nor does the Trafficking Act's civil cause of action apply to the extraterritorial conduct alleged in the complaint.

Defendants strongly condemn the use of forced labor in all its forms. And, as the complaint recognizes, Defendants also have undertaken significant efforts in Côte d'Ivoire to combat the separate and distinct issue of non-coerced child labor—a troubling practice that is the focus of many of the complaint's allegations, although it is not addressed by the Trafficking Act. But Plaintiffs' legal theory—which seeks to hold Defendants liable for the actions of unrelated, independent actors halfway across the world—depends on an unjustifiably expansive construction of "participation in a venture" that finds no support in the Trafficking Act.

This Court should affirm.

## JURISDICTION

Although Plaintiffs invoke 18 U.S.C. § 1596 and 28 U.S.C. §§ 1331, 1332(a)(2), and 1367, the district court lacked subject matter jurisdiction because Plaintiffs lack Article III standing.  In addition, 18 U.S.C. § 1596 addresses criminal jurisdiction over certain "offense[s]"; it does not confer extraterritorial jurisdiction over civil suits brought by private plaintiffs under 18 U.S.C. § 1595.  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.  Whether Plaintiffs lack Article III standing because (a) their alleged injuries are not fairly traceable to any Defendant and (b) they do not allege any risk of future harm from Defendants, yet seek injunctive relief to alter the conduct of third parties.

2.  Whether Plaintiffs failed to state a claim under the Trafficking Act because (a) the complaint does not adequately allege that any Defendant "participat[ed] in a venture" within the meaning of 18 U.S.C. § 1595 or (b) the Act's civil cause of action does not apply extraterritorially.

3.  Whether Plaintiffs failed to state a claim for unjust enrichment, negligent supervision, or intentional infliction of emotional distress because the complaint does not allege any specific connection between any Defendant and anyone who trafficked Plaintiffs or coerced their labor.

5

## STATUTES

Relevant provisions of the Trafficking Act appear in the Addendum.

## STATEMENT OF THE CASE

### A.    Statutory Background

Congress enacted the Trafficking Victims Protection Act in 2000 "to combat trafficking in persons," which it found was "increasingly" being "perpetrated by organized, sophisticated criminal enterprises."  22 U.S.C. § 7101(a), (b)(8).  To that end, Congress enhanced criminal penalties for certain offenses related to peonage, slavery, involuntary servitude, sex trafficking, and forced labor.  *See* Pub. L. No. 106-386, § 112(a)-(b), 114 Stat. 1464, 1486-90 (2000) (amending 18 U.S.C. §§ 1581, 1583, and 1584, and codifying §§ 1589-1594).  As originally enacted, the statute permitted only criminal enforcement.

In 2003, Congress reauthorized the Act and created a civil cause of action allowing victims of violations to sue "the perpetrator" of the criminal violation.  *See* Pub. L. No. 108-193, § 4(a)(4)(A), 117 Stat. 2875, 2878 (2003).  In 2008, Congress amended the civil cause of action to provide that:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

6

Civil relief is thus available under Section 1595 only when an underlying criminal violation occurred.  And Section 1595 permits claims only against (1) the perpetrator of the violation or (2) those who knowingly benefit from participating in a venture that committed the violation, while having actual or constructive knowledge that the venture did so.

### B.    The Complaint's Allegations

Plaintiffs are eight citizens of Mali.  They allege that, as minors in Mali, they encountered various unnamed individuals who offered them jobs in Côte d'Ivoire. JA70-84.  They allege that they were transported to various regions around Côte d'Ivoire and forced to work on different cocoa plantations, where their pay was de- nied or withheld.  *Id.*  Although the amount of time Plaintiffs remained in Côte d'Ivoire varied from a few months to several years, *e.g.*, JA81, 85, each alleges that he ultimately returned to Mali.  No Plaintiff alleges that he faces any future risk of being forced to work on a cocoa farm.

Plaintiffs allege that the cocoa industry in Côte d'Ivoire is decentralized, dis- organized, and sometimes "lawles[s]."  JA22.  Thousands of individual farmers across the country grow cocoa on their own independent farms.  JA33.  Those farm- ers contract with "local buyers," who serve as intermediaries with downstream pur-

chasers.  JA9.  The complaint characterizes these (unidentified) local buyers as "employees and/or agents of the Defendants," but includes no factual allegations to explain or support these purported employee or agent relationships.  *Id*.

Defendants are U.S.-based companies that are among the furthest downstream purchasers of cocoa from Côte d'Ivoire.  Cargill, Incorporated; Cargill Cocoa; and Olam Americas LLC are cocoa suppliers that purchase cocoa beans from intermediaries, process them, and sell the processed cocoa to companies that use cocoa in their consumer products.  JA17-18.  Nestlé USA, Inc.; Barry Callebaut USA; Mars, Incorporated; The Hershey Company; and Mondelēz International, Inc. are cocoa processors and/or food and beverage manufacturers that use cocoa purchased from various suppliers.  JA16-19.

The complaint alleges that "Defendants have failed to stop the illegal use of forced child labor in cocoa harvesting," and claims generally that Defendants "maintai[n] exclusive supplier/buyer relationships" with unspecified farms and farming cooperatives in Côte d'Ivoire.  JA28-29.  In addition, it generally alleges that Defendants sometimes confer aid—such as training and farming supplies—through unidentified "agents" to unspecified cocoa farmers in Côte d'Ivoire.  JA29.  Although the complaint at times suggests that such aid is needed "to grow the quality and quantity of cocoa beans" that Defendants use to make chocolate, *id.*, it elsewhere acknowledges that Defendants support local farms and farming cooperatives as part

of a "holistic approach address[ing] the root causes of child labor around poverty and lack of rural development," JA62-64; *see also*, *e.g.*, JA38, 68.

The complaint does not include any allegations connecting any specific Defendant to any Ivorian farm on which any Plaintiff allegedly worked, or to any individual who trafficked any Plaintiff to Côte d'Ivoire.  Instead, the complaint alleges that four Plaintiffs worked in "area[s]" of Côte d'Ivoire that supplied cocoa to some (but not all) Defendants, JA71, 75, 77, 85,[1] while four Plaintiffs allegedly worked in "free zone[s]," JA73, 80, 83.  According to the complaint, "free zones" are "unregulated," unmonitored areas of cocoa production.  JA32, 80.

For example, Plaintiff Issouf Coubaly was approached by an unnamed "man" who "offered him a job."  JA70.  The man bought Mr. Coubaly a bus ticket to Côte d'Ivoire.  *Id.*  On his arrival, Mr. Coubaly met another unnamed "man," who bought Mr. Coubaly another "bus ticket to another village."  *Id.*  Mr. Coubaly then traveled to a "very isolated" location—he does "not know exactly where"—which turned out to be a cocoa farm purportedly located in an "area" of Côte d'Ivoire that "primarily

---

[1] Accordingly, some Defendants are not alleged to have purchased cocoa even from an "area" of Côte d'Ivoire where any Plaintiff was allegedly forced to work.  Those Defendants are merely alleged to purchase cocoa originating somewhere in Côte d'Ivoire.

suppl[ied] cocoa" to some (but not all) Defendants.  JA70-71.  There are no accompanying allegations that any Defendant actually purchased cocoa originating from the farm on which Mr. Coubaly worked.

Similarly, Plaintiff Arouna Ballo was approached by an unnamed "man" who promised him a "good job."  JA82.  That man, "who seemed to know" an unnamed bus driver, bought Mr. Ballo a bus ticket.  *Id.*  The bus driver then took Mr. Ballo to a place near Grabo, Côte d'Ivoire, which turned out to be a cocoa farm located in a "free zone."  JA82-83.  Again, the complaint does not allege that any Defendant purchased any cocoa produced by the farm at which Mr. Ballo worked.

Instead of connecting Defendants to the particular farms where Plaintiffs worked, the complaint alleges that the "vast majority" of the cocoa that Defendants purchase comes from "free zones" and "is sourced through untraceable channels." *See* JA41, 47, 51, 56-57, 59-60, 70.  And it explains that unscrupulous farmers sometimes deceive buyers about the cocoa's origin—for example, by "purchas[ing] beans from the free zone and pass[ing] them off as [Child Labor Monitoring and Remediation System] beans"—leaving buyers with "no way" to know whether its production involved troubling labor practices.  JA48. Plaintiffs nevertheless speculate that it is possible that some cocoa from farms where Plaintiffs worked was sold to Defendants because they are large-scale purchasers of cocoa beans from Côte d'Ivoire. JA72.

Although the complaint does not allege any specific connections between any Defendant and any Plaintiff's trafficker(s) or employer(s), it *does* allege that Defendants have established clear policies prohibiting their suppliers from using child labor and have joined a variety of industry groups that combat child labor in cocoa production.  JA36-69.  These efforts have included implementing a Child Labor Monitoring and Remediation System "to identify and remediate child labor," JA40, 45, 50-51, piloting new efforts to improve the traceability of cocoa beans, and providing awareness training to communities, JA47-48.  Nonetheless, the complaint alleges that, because they continue to purchase cocoa sourced from Côte d'Ivoire, Defendants—many of which are direct competitors—have somehow joined together with countless others in a "cocoa supply chain 'venture'" aimed at profiting from forced labor.  JA89.

According to the complaint, these allegations support claims of forced labor and trafficking under the Trafficking Act, 18 U.S.C. §§ 1589, 1590, 1595, as well as common-law claims for unjust enrichment, negligent supervision, and intentional infliction of emotional distress.  Plaintiffs sue on their own behalves, and also seek to represent a class of all individuals who were trafficked from Mali by any person or group to the cocoa-producing regions of Côte d'Ivoire and forced to perform labor while under the age of 16.  JA14-15.  They seek both unspecified damages and injunctive relief.

11

## C.     The District Court's Ruling

Defendants moved to dismiss the complaint on a number of grounds, including lack of Article III standing and failure to state a claim on the merits.  The district court dismissed for lack of Article III standing, without reaching Defendants' merits arguments, concluding that the complaint does not plead that any Plaintiff's injuries are fairly traceable to any Defendant.  JA115-121.

The district court identified two separate and distinct flaws in Plaintiffs' standing theory.  First, the court explained that "the complaint does not connect the [D]efendants to any specific cocoa plantations," much less "address the degree of influence" that Defendants might have had over particular plantations.  JA116. "General industry-wide allegations," the court noted, "fail to establish a non-speculative relationship between each plaintiff and each defendant," as do "allegations that a group of defendants purchased cocoa from the regions in which plaintiffs labored." *Id.*

Second, the district court held that the complaint does not "adequately explain what role intermediaries played in the supply chain," alleging only (in conclusory fashion) that some local buyers acted as Defendants' "employees and/or agents"— legal conclusions the court could not accept without supporting factual allegations. JA117 & n.2.  Moreover, the court observed, other allegations in the complaint con-

12

tradict Plaintiffs' contention that their injuries are traceable to Defendants; for example, the complaint alleges that the "free zones" where several Plaintiffs worked are unmonitored, and thus that the cocoa originating from those zones is untraceable. JA117-118.  Those "deficits create[d] uncertainty in the 'chain of causation' sufficient to defeat standing."  JA118 (citation omitted).

After explaining these key flaws, the district court rejected Plaintiffs' argument that their "theory of venture liability" satisfies the traceability element of standing.  JA119.  As the court explained, whether Plaintiffs plausibly pleaded that Defendants participated in a venture within the meaning of the Trafficking Act "is a merits question distinct from the constitutional standing requirement," as Congress "cannot eliminate the constitutional causation requirement."  *Id.*  In short, Article III only "'grants federal courts the power to redress harms that defendants cause plaintiffs.'"  JA119-120 (quoting *TransUnion*, 141 S. Ct. at 2205).

Because the district court dismissed the complaint for lack of jurisdiction, it did not reach Defendants' additional arguments that Plaintiffs failed to state a claim on the merits under either the Trafficking Act or the common law, and that the Act's civil cause of action does not apply extraterritorially.

## SUMMARY OF ARGUMENT

I.  Plaintiffs lack standing because their injuries are not fairly traceable to any Defendant's conduct.

A.  The district court correctly identified two independent reasons why the complaint fails to satisfy Article III's causation requirement:  First, the complaint does not plead any link, much less a causal connection, between any Defendant and the individuals who trafficked Plaintiffs or forced them to work.  It does not even plausibly allege that any Defendant purchased cocoa that originated at any farm where Plaintiffs were forced to work.  Second, although the complaint acknowledges that cocoa flows through numerous intermediaries before it reaches Defendants, it does not identify those intermediaries, much less explain how Defendants' alleged conduct had a sufficient effect on their actions to satisfy fair traceability.

Plaintiffs do not address either of those flaws.  Instead, they argue that the district court erroneously required them to plead that Defendants "directly" caused their injuries.  But the court required no such thing; it merely held that the complaint's factual allegations do not satisfy Article III's irreducible constitutional minimum.  That routine application of settled precedent will not prevent other plaintiffs from bringing plausible venture claims under the Trafficking Act, so long as their injuries are fairly traceable to the defendants.

14

B.  Nor are Plaintiffs correct that they satisfy Article III merely by asserting that that they have sufficiently alleged that Defendants "participat[ed] in a venture" within the meaning of the Trafficking Act.  The Supreme Court has rejected the proposition that a plaintiff whose allegations plausibly state a claim under federal law automatically satisfies Article III's requirements.  And this Court has made clear that courts do not generally "assume" the merits of a plaintiff's legal theory in assessing standing.  Rather, the cases on which Plaintiffs rely stand for the narrower proposition that a plaintiff need not prove that the conduct challenged is unlawful to have standing to bring that challenge.

C.  Plaintiffs also lack standing to pursue injunctive relief because they do not allege any likelihood of future injury and seek an injunction to change the conduct of third parties not before the Court.

II.  Alternatively, the complaint does not state a claim for relief under the Trafficking Act or common law.

A.  The complaint does not adequately allege that Defendants "participat[ed] in a venture" within the meaning of the Trafficking Act.  That element requires that the defendant "took part in a common undertaking or enterprise involving risk and potential profit" with the primary offenders.  *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021).  Although Plaintiffs' "venture" theory is not clear, the complaint appears to allege a sprawling venture that includes not only all Defendants

15

(many of which directly compete with one another), but also countless independent farmers, buyers, shippers, and others in the so-called "cocoa production system of Côte d'Ivoire." Open.Br.13. But a global "production system" or "supply chain" is shorthand for a vast web of economic interactions by independent actors; it is not a venture within the meaning of the Trafficking Act.

Even if Plaintiffs had alleged some plausible venture, the complaint does not allege that any Defendant was even aware of the individuals who trafficked Plaintiffs or forced them to work, much less that any Defendant engaged in a common undertaking, *i.e.*, a venture, with any of those individuals. Moreover, neither purchasing a product from a supplier nor continuing to purchase commodities in a country that has failed to eradicate labor abuses constitutes "participation" in a venture.

B.  Separately, Plaintiffs' Trafficking Act claim fails because the Act's civil cause of action, 18 U.S.C. § 1595, does not apply extraterritorially.

C.  Plaintiffs' common-law claims also are barred. Plaintiffs have forfeited any argument with respect to standing for those claims. Regardless, each claim is barred by the three-year statute of limitations and also fails on the merits.

## ARGUMENT

## I.    The District Court Correctly Held That Plaintiffs Lack Article III Standing.

Article III standing "'is an essential and unchanging'" prerequisite for the exercise of federal court jurisdiction. *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658,

16

663 (D.C. Cir. 1996) (en banc) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  The party invoking federal jurisdiction must "clearly . . . allege facts demonstrating" that they "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citation omitted; omission in original).  "[T]hreadbare recitals of the elements of [standing], supported by mere conclusory statements, do not suffice," nor will this Court "accept inferences that are unsupported by the facts set out in the complaint." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citations omitted; second alteration in original).

Causation—the requirement that the plaintiff's injury be fairly traceable to the defendant's conduct—is lacking here.  To satisfy this requirement, *each* Plaintiff must allege that his injury is fairly traceable not to the cocoa industry generally, but to the wrongful conduct of a *particular* Defendant—*i.e.*, that "the asserted injury was the consequence of the defendants' actions." *Warth v. Seldin*, 422 U.S. 490, 505 (1975); *see also Disability Rights S.C. v. McMaster*, 24 F.4th 893, 900 (4th Cir. 2022) ("[T]he standing inquiry must be evaluated separately as to each defendant.").  The district court correctly concluded that the complaint does not satisfy that threshold requirement.

### A.    Plaintiffs' Alleged Injuries Are Not Fairly Traceable To Any Defendant's Alleged Conduct.

To meet the "irreducible constitutional minimum of standing," there must be "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560 (alterations in original). "[U]nless the defendant's actions had a 'determinative or coercive effect' upon the third party, the claimant's quarrel is with the third party, not the defendant." *Turaani v. Wray*, 988 F.3d 313, 316 (6th Cir. 2021) (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)).

Plaintiffs do not allege that Defendants trafficked them or forced them to work. Instead, they contend that those injuries are "fairly . . .trace[able]" to Defendants because Defendants can be held responsible for the actions of those traffickers and farmers. To establish standing when the alleged harm is caused by a third party, a plaintiff must present "substantial evidence of a causal relationship between [defendants' conduct] and the third-party conduct, leaving *little doubt as to causation*." *Arpaio*, 797 F.3d at 20 (emphasis added). But here, there are no allegations supporting a plausible inference that Defendants' actions had *any* effect—much less "a 'determinative or coercive effect'"—upon the third-party traffickers and farmers who actually caused Plaintiffs' alleged injuries. *Turaani*, 988 F.3d at 316.

18

The district court detailed two independent reasons why the complaint fails to satisfy these standards:  First, the complaint does not plausibly allege that any Defendants purchased cocoa originating from—or had any other link to—the specific farms where Plaintiffs were allegedly forced to work.  JA116.  Second, even if Plaintiffs had plausibly alleged that Defendants indirectly obtained some cocoa produced at the farms where Plaintiffs worked, the complaint's allegations confirm that cocoa sold by farmers flows through multiple, distinct intermediaries—individuals and entities that have no alleged connection to or control by Defendants—before the cocoa could reach Defendants.  JA115.  Either reason is sufficient to affirm.

1. Plaintiffs allege that they were injured by unnamed individuals who brought them to—and forced them to work on—cocoa farms in Côte d'Ivoire.  But the complaint does not allege any link between "the individual [D]efendants" and the "particular plantations" where Plaintiffs were forced to labor, much less a link between Defendants and the individuals who forced Plaintiffs to work or trafficked them.  JA116.

The complaint alleges that four Plaintiffs worked on cocoa farms in "frontier" or "free zone[s]," which it describes as unregulated areas "where there is no monitoring of anything"—and therefore impossible to connect to any Defendant.  JA32, 73, 80, 83; *see also* JA32-33 (describing "'free zones'").  The remaining Plaintiffs

assert vaguely that they worked in "area[s]" in Côte d'Ivoire from which one or more (but not all) Defendants sourced some of their cocoa.  JA71, 75, 77, 85.

But the complaint alleges that there are *thousands* of independent small cocoa farms in Côte d'Ivoire, JA33—meaning that there are dozens of unrelated farms, if not more, in each "area" of the country.  Thus, the mere allegation that a Plaintiff worked in a particular "area" that provides cocoa to one or more Defendants cannot plausibly support the inference of any link—direct or indirect—between the specific farm on which the Plaintiff worked and any Defendant.

That is especially true because the complaint itself alleges that tracing Defendants' purchases to cocoa produced at a particular farm is all but impossible.  According to the complaint, the "vast majority" of Defendants' cocoa "is sourced through untraceable channels," JA41, and there is only a "small amount of traceable cocoa" in the supply chain, JA38.  And the complaint alleges that even when cocoa is apparently sourced through a traceable channel, "there is no way" Defendants "could know" where their beans actually originated, because unscrupulous intermediaries could "purchase beans from the free zone and pass them off as" originating elsewhere.  JA48.

The complaint thus alleges *no* plausible connection between any Defendant and the unidentified individuals who allegedly injured Plaintiffs.  It does not plausibly allege that any Defendant purchased cocoa that originated on any farm on which

any Plaintiff worked, much less "maintain[ed] exclusive supplier/buyer relation-ships" with *that* farm or provided *it* with "financial support" or assistance.  JA28-29.  As a result, the complaint "lack[s] the specificity necessary to establish causa-tion with the particularity that Article III requires."  JA116.

Plaintiffs cannot cure the complaint's Article III shortcomings by asserting that Defendants knew "generally that . . . their cocoa suppliers employed children."  JA116.  Many of the allegations in the complaint—and the vast majority of the sources it cites—concern child labor generally.  But, as Plaintiffs implicitly con-ceded in the district court (ECF 33, at 12), the Trafficking Act is limited to *forced* labor and trafficking and does not address non-coerced child labor.  *See* 18 U.S.C. § 1589(a).  For that reason, Defendants' purported awareness of child labor does not support any plausible inference regarding Defendants' awareness of forced labor.  And, more fundamentally, each Plaintiff must allege a fairly traceable causal con-nection between each Defendant and the *Plaintiff's* injuries, not an attenuated con-nection between Defendants and "other, unidentified" third parties who might have experienced similar injuries.  *Warth*, 422 U.S. at 502.  Generalized allegations of awareness of child labor do not support any plausible inference of a connection be-tween Defendants and the infliction of these particular Plaintiffs' injuries.

Nor can Plaintiffs fill in that gap by speculating that because Defendants pur-portedly "collectively controlled 70% of the cocoa supply chain in Côte D'Ivoire,"

21

it is "more likely than not" that they were "legally responsible for trafficking and enslaving each of the Plaintiffs." Open.Br.40 (citing JA91). Even if that conclusory allegation regarding Defendants' collective market share were true, it would be irrelevant because "[P]laintiffs must establish causation separately for each [D]efendant." JA115.

And the inference Plaintiffs seek to draw relies on an incorrect probabilistic method of reasoning. Plaintiffs' misuse of statistics "leads to the demonstrably wrong conclusion that one hundred percent of" injuries occurring at Ivorian farms are traceable to Defendants, because it is more likely than not that every farm, considered individually, supplies one or more Defendants. *In re Asacol Antitrust Litig.*, 907 F.3d 42, 54 (1st Cir. 2018); *see also*, *e.g.*, *Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 425 (D.C. Cir. 1988) (evidence that defendant manufactured 95% of drug was insufficient to prove that defendant caused plaintiff's injury from that drug).

Finally, even if a plausible inference could be drawn that Defendants obtained cocoa from the farms on which Plaintiffs worked, Plaintiffs would still need allegations supporting a plausible inference that Defendants' actions had "a 'determinative or coercive effect'" upon the third-party traffickers and farmers who actually caused Plaintiffs' alleged injuries. *Turaani*, 988 F.3d at 316. But the district court correctly concluded that the complaint does not "address the degree of influence that the [D]efendants had over the plantations" with which they *did* have a relationship.

JA116.  So there is no basis for inferring that a purchaser-seller relationship could be sufficient to hold Defendants responsible for an unidentified farmer's labor practices.

2.  Plaintiffs' supply-chain theory of causation fails to establish traceability for a second, independent reason:  "[T]he complaint does not adequately explain what role intermediaries played in the supply chain."  JA117.  Thus, *even if* the complaint had plausibly alleged that cocoa grown on a farm on which any Plaintiff worked ultimately made its way to any Defendant, the court would still "have to accept a number of very speculative inferences and assumptions" about the (unspecified) third parties in the supply chain between Defendants and the "non-parties" who trafficked Plaintiffs and "subjected them to forced labor on cocoa farms that were owned by non-parties."  JA117-118 (citation omitted).

Article III demands "a 'fairly traceable' injury" and cannot be satisfied by an attenuated connection through the "action of some third party."  *Lujan*, 504 U.S. at 560-61 (alterations omitted).  Although it is sometimes possible to establish Article III standing through harm caused by a third party, it is "substantially more difficult" in such cases "to meet the minimum requirement of Art[icle] III."  *Warth*, 422 U.S. at 505.  And courts rarely will "endorse standing theories that rest on speculation about the decisions of independent actors."  *Clapper v. Amnesty Int'l USA*, 568 U.S.

398, 414 (2013).[2]  Thus, causation "cannot be 'contingent on speculative assumptions about the past and future acts and motives of strangers to this suit' or 'about market forces.'"  JA117 (quoting *Prosser v. Fed. Agric. Mortg. Corp.*, 593 F. Supp. 2d 150, 155 (D.D.C. 2009)).

The complaint does not plausibly allege that any Defendant had a "determinative or coercive effect upon the action[s]" of anyone else in the Ivorian cocoa industry, *Bennett*, 520 U.S. at 169, much less on every link in the purported chain between each Defendant and the individuals who forced each Plaintiff to work.  Rather, the complaint's allegations on this subject "are both conclusory and, at points, internally inconsistent."  JA117.

To begin, the complaint attempts to paper over the complex web of actors buying and selling cocoa in Côte d'Ivoire by vaguely asserting that Defendants are connected to unspecified Ivorian cocoa farms through "local buyers, who are employees and/or agents of the Defendants."  JA9.  The Court should not credit that assertion:  Whether any Defendant in fact has an employer-employee or principal-agent relationship with unnamed local buyers would "turn on numerous factual considerations," and the complaint "fails to allege any facts [to] support" those legal

---

[2] Plaintiffs (at 30-31) assert that *Clapper* is inapplicable because it involved the injury-in-fact element of standing.  But *Clapper* rests on a more general proposition—speculation cannot support the plausible inference required to defeat a motion to dismiss—as the decisions cited in the text make clear.

conclusions.  JA117 & n.2; *see Kareem v. Haspel*, 986 F.3d 859, 865-66 (D.C. Cir. 2021) (the Court does "not assume the truth of legal conclusions" when assessing standing "at the motion to dismiss stage").

Nor does the complaint otherwise "explain the links in the supply chain between the plantations and the [D]efendants," JA117, much less plausibly allege that Defendants exercised sufficient control over each link in the chain.  Quite the opposite:  It includes numerous allegations that *undermine* the notion that Plaintiffs' injuries could be even *indirectly* caused by Defendants.  JA118.  For example, the complaint alleges that there is only a "small amount of traceable cocoa" in Côte d'Ivoire.  JA38.  That is, "[t]he organized supply chains of a handful of companies reach only a fraction of the entire cocoa-growing population of Côte d'Ivoire."  JA46.  And it asserts that the "vast majority" of Defendants' cocoa "is sourced through untraceable channels" and that there is no monitoring of those "free zones," where multiple Plaintiffs allegedly worked.  JA31-32, 41.

Given those allegations, the complaint cannot plausibly allege that Defendants' actions had *any* effect on the third-party farmers and traffickers that allegedly harmed Plaintiffs, much less the sort of "determinative or coercive effect" that would establish fair traceability between Defendants' conduct and Plaintiffs' injuries.  *Bennett*, 520 U.S. at 169.  The "protracted chain of causation" alleged by Plaintiffs thus "fails both because of the uncertainty of several individual links and because of the

number of speculative links that must hold for the chain to connect the challenged ac[t] to the asserted particularized injury." *Fla. Audubon Soc'y*, 94 F.3d at 670.

Perhaps recognizing this flaw, Plaintiffs assert that Defendants are causally responsible for Plaintiffs' injuries because they purportedly "*failed to stop* the illegal use of forced child labor in cocoa harvesting" in Côte d'Ivoire generally.  JA28-29 (emphasis added).  But Defendants cannot be held liable for failing to change labor conditions at unspecified farms in Côte d'Ivoire that Defendants are not alleged to control or even purchase cocoa from.  And Article III's causation requirement cannot be satisfied by the complaint's theory that Defendants' alleged failure to unilaterally eliminate the risk of forced labor within an entire country makes *Defendants* causally connected to all allegedly unlawful labor conditions on every cocoa farm throughout that country.

Plaintiffs' allegations would have required the district court to speculate that their injuries were caused by Defendants' continued purchases of cocoa grown any-where in Côte d'Ivoire, rather than by the unnamed individuals responsible for mis-leading or mistreating Plaintiffs.  The district court correctly refused to do so.

## B.    Plaintiffs' "Venture" Theory Does Not Establish Article III Standing.

Plaintiffs do not grapple with the two independent bases on which the district court found they lacked standing.  Instead, they and their amici criticize the district court for supposedly applying a "direct causation" requirement for standing that

26

would "eliminat[e] the possibility of venture liability" under the Trafficking Act. Open.Br.17-18. In Plaintiffs' view, the district court should have "assumed the merits" of their "venture theory of liability" and then concluded that Defendants "contributed to causing [Plaintiffs'] injuries by their 'participation in the venture.'" *Id.* at 25. That approach, Plaintiffs assert, "obviates the need" for them "to demonstrate individualized causation chains for each of the co-venturers because they are jointly and severally liable for all acts of the venture." *Id.* at 15-16. Plaintiffs' effort to establish standing by arguing the merits fails for multiple reasons.

1. The district court did not base its standing decision on the absence of a direct relationship between Defendants and Plaintiffs' claimed injuries, as Plaintiffs and their amici assert. Open.Br.18; *see also* Amicus.Br.8, 9, 11. A decision premised solely on the absence of a direct relationship would have been quite short: The complaint does not allege any direct connection between Defendants and Plaintiffs.

Rather, the court held that Plaintiffs did not plausibly allege *any* fairly traceable connection. Specifically, the complaint "does not connect the [D]efendants to any specific cocoa plantatio[n]" on which Plaintiffs worked. JA116. It does not "address the degree of influence that the [D]efendants had over the plantations" with which they had relationships. *Id.* And it "does not adequately explain what role intermediaries played in the supply chain" between cocoa farms and Defendants. JA117.

27

Nothing about that analysis "eliminat[es] the possibility of venture liability" under the Trafficking Act. Open.Br.18. As the district court explained, many plaintiffs are able to allege facts supporting a plausible inference of a sufficient causal connection in cases claiming venture liability under the Trafficking Act—allegations that do not require the court "to speculate about the role of the intermediaries or whether a particular defendant had a tie to a particular plaintiff." JA120 (citing, *e.g.*, *A.B. v. Hilton Worldwide Holdings Inc.,* 484 F. Supp. 3d 921, 929-30 (D. Or. 2020)).[3] And in cases under other statutes, too, plaintiffs have "satisfied the traceability requirement" by alleging a "clearly defined" relationship between the defendant and the third parties "that harmed the plaintif[f]." JA120-121 (citing *Baloco ex rel. Tapia v. Drummond Co.*, 640 F.3d 1338 (11th Cir. 2011)).

That distinction explains why the parade of horribles advanced by Plaintiffs and their amici is inapposite. For example, amici assert that in environmental cases,

---

[3] Plaintiffs' reliance on *Merriam v. Demoulas*, 2013 WL 2422789 (D. Mass. June 3, 2013), is puzzling. Although Plaintiffs describe *Merriam* as "the only reported [Trafficking Act]-specific case confirming . . . that a plaintiff has standing to sue indirect actors," Open.Br.19, *Merriam* is not reported and has nothing to do with the Trafficking Act; it involved a claim under the Employee Retirement Income Security Act. And its holding that Article III allowed the plaintiffs to bring breach of fiduciary duty claims against the directors of a company that injured the plaintiffs by allegedly failing to take action against the company officials whose decisions supposedly injured plaintiffs does not conflict with the district court's decision here—because the factual allegations supported a plausible inference of a causal connection between the plaintiffs' injuries and the defendant's inaction. 2013 WL 2422789, at *4.

"courts routinely find Article III causation even when plaintiffs cannot prove that it was defendants' pollution, in particular, that injured the plaintiffs." Amicus.Br. 12. But in environmental cases, "[t]hreats or increased risk . . . constitutes cognizable harm," and by "point[ing] to a definite polluting source—namely, [the defendant]," plaintiffs establish the "'fairly traceable' requirement." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 160-62 (4th Cir. 2000) (en banc). Courts do not require "scientific certainty" that the defendant's pollution *alone* caused the plaintiff's injury, because "it would be virtually impossible" to make that showing. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 558 (5th Cir. 1996). But they do require a fairly traceable causal link between the defendants' alleged unlawful conduct and the plaintiffs' injury. *See*, *e.g.*, *Gaston Copper*, 204 F.3d at 162; *Nat. Res. Def. Council, Inc. v. Watkins*, 954 F.2d 974, 980 (4th Cir. 1992). That is precisely what is lacking here.

Similarly, Plaintiffs point to aiding-and-abetting decisions. But in those cases, the plaintiffs alleged that the defendants provided substantial assistance to the primary wrongdoer's injurious conduct—supporting a plausible inference that the plaintiffs' injuries were fairly traceable to the defendants' conduct. For example, in *Halberstam v. Welch*, the Court held that the record evidence supported the inference that the defendant "knowingly . . . assist[ed]" her live-in partner's criminal enterprise by helping him "[d]ispos[e] of" stolen "loot." 705 F.2d 472, 486 (D.C. Cir. 1983).

29

*Mastafa v. Australian Wheat Board* similarly involved allegations that the defendants "aided and abetted the Saddam Hussein regime" in its commission of particular acts against plaintiffs, including by providing "substantial assistance . . . through the form of kickbacks and/or financial assistance."  2008 U.S. Dist. LEXIS 73305, at *2-5, *8 (S.D.N.Y. Sept. 25, 2008) (omission in original).  There are no comparable allegations here.[4]

In sum, the district court's decision constitutes a routine application of settled precedent that does not in any way infringe decisions upholding standing in other contexts where the allegations or evidence support an inference that the plaintiff's injury is fairly traceable to the defendant's actions.

2.  Plaintiffs next assert (at 11, 25-27) that by claiming a violation of the Trafficking Act, they have automatically established standing.  In Plaintiffs' view, a court must *assume* that they have properly alleged "venture" liability under the Trafficking Act—whether or not their allegations are sufficient to survive a motion to dismiss—and automatically conclude that their injuries are fairly traceable to every Defendant in the purported "venture."  That bizarre contention is wrong, for multiple reasons.

---

[4] *Autolog Corp. v. Regan* involved a defendant's infringement of a coastwise monopoly guaranteed to American vessels depriving union members of job opportunities from domestic shippers.  This Court expressly determined that the plaintiff union alleged facts supporting a plausible inference that the injury, loss of jobs, was fairly traceable to the defendant's violation.  731 F.2d 25, 28-30 (D.C. Cir. 1984).

To begin, the Supreme Court has twice "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 141 S. Ct. at 2205 (quoting *Spokeo*, 578 U.S. at 341). As the Court explained in the context of the injury-in-fact element of Article III standing, "[f]or standing purposes, . . . an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *Id*. "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id*. (emphasis omitted).

*TransUnion*'s holding demonstrates that stating a statutory violation does not automatically establish standing. Plaintiff there had undisputedly proven the elements of the statutory claim with respect to the entire class, but the Court nonetheless held that most class members had not suffered the injury-in-fact that Article III requires. *TransUnion*, 141 S. Ct. at 2209-12.

This case involves the "fairly traceable" element of Article III standing, rather than the injury-in-fact element addressed in *TransUnion*, but there is no basis for applying a different principle. Both elements are equal parts of the "'irreducible

constitutional minimum' of standing." *Spokeo*, 578 U.S. at 338. Asserting a statutory violation does not relieve a plaintiff of its obligation to allege facts supporting a plausible inference that the plaintiff's injury is fairly traceable to the defendant's conduct—as *TransUnion* recognized: A plaintiff must be "harmed by a defendant's statutory violation." 141 S. Ct. at 2205 (emphasis omitted).

True, the Supreme Court has stated that "Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *TransUnion*, 141 S. Ct. at 2204-05 (quoting *Spokeo*, 578 U.S. at 341). But "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *Id*. at 2205. And the same is true with respect to Article III's "fairly traceable" requirement. "'Article III grants federal courts the power to redress harms *that defendants cause plaintiffs*, not a freewheeling power to hold defendants accountable for legal infractions.'" *Id*. (emphasis added).

Plaintiffs cite (at 28) *Spokeo*'s statement that Congress can "articulate chains of causation that will give rise to a case or controversy where none existed before." 578 U.S. at 341. But, as *TransUnion* makes clear, there must be a real-world, fairly traceable "chai[n] of causation" in the *factual* sense before Congress can elevate it to *legal* significance—just as there must be an actual, concrete injury-in-*fact* before

Congress can elevate it to the status of an injury-in-*law*. That is the unmistakable *holding* of *Spokeo*: Article III creates minimum standing requirements that may go unsatisfied even if the plaintiff pleads a violation of a federal statute. *Id.* (disclaiming that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute" authorizes a lawsuit).

The district court therefore correctly concluded that "although Congress may create new forms of liability, it cannot eliminate the constitutional causation requirement any more than it can 'relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III['s]' injury-in-fact requirement." JA119 (alteration in original) (quoting *TransUnion*, 141 S. Ct. at 2205). Whether Plaintiffs have alleged a violation of the Trafficking Act therefore does not displace the Article III inquiry, which looks to the complaint's factual allegations. And the district court properly concluded that the allegations here fall far short of satisfying the causal connection requirement.

In an attempt to avoid that result, Plaintiffs make much of the district court's statement that whether Defendants participated in a venture within the meaning of the Trafficking Act "is a merits question distinct from the constitutional standing requirement." JA119 (citing *Tax Analysts & Advocs. v. Blumenthal*, 566 F.2d 130, 142 (D.C. Cir. 1977) ("[T]he question of standing is a matter apart and distinct from

the merits of the substantive claims put forth.")).  But that conclusion was wholly consistent with the Supreme Court's analysis in *TransUnion*.

Plaintiffs also rely (at 24) on this Court's statement that "when considering whether a plaintiff has article III standing, a federal court must assume *arguendo* the merits of his or her legal claim."  *Parker v. District of Columbia*, 478 F.3d 370, 377 (D.C. Cir. 2007).  But the Court has already rejected the contention that this statement "requir[es] [it] to accept [a plaintiff's] 'legal theory' when [it] evaluate[s] their standing."  *Boyland*, 913 F.3d at 124.  Instead, it "stand[s] for the narrower proposition that a party need not *prove* that the . . . action it attacks is unlawful . . . in order to have standing to level that attack."  *Id*. (citation omitted; omissions in original).

Thus, *Boyland* held that the plaintiffs there failed to satisfy the redressability element of Article III standing, without regard to whether they had sufficiently alleged a constitutional or statutory violation.  913 F.3d at 124-25.  And in *Taylor v. FDIC*, the Court explained that it could direct dismissal for lack of standing where the complaint failed to satisfy fair traceability—even if the standing causation inquiry "overlaps with the merits . . . precisely."  132 F.3d 753, 767 (D.C. Cir. 1997).  Indeed, if Plaintiffs were correct in their broad reading of *Parker*, there would be little left of Article III's fair traceability requirement:  In *every* case where causation

is a merits issue, the court would have to assume in assessing standing that the plaintiff would prevail on the merits, and therefore that the defendant caused the plaintiff's injuries.  That is not the law.

Importantly, the district court's decision does not suggest that allegations sufficient to state a venture-liability claim under the Trafficking Act are likely to test any Article III boundaries.  When a complaint's allegations support plausible inferences satisfying the Act's "participation in a venture" standard, properly interpreted, *see infra* 38-40, there will generally be no difficulty identifying a sufficient causal connection between the defendant's conduct and the plaintiff's injury that is analogous to the forms of vicarious and indirect liability "'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct at 2204.  The constitutional issue arises here only because Plaintiffs' vision of open-ended venture liability, where a defendant may be liable merely for purchasing a commodity sourced from a country where problematic labor conditions persist, falls far short of what the Trafficking Act requires.  It is that theory of liability—not the liability that Congress imposed—that runs afoul of Article III's irreducible constitutional minimum.

## C.    Plaintiffs Lack Standing To Pursue Injunctive Relief.

Even if Plaintiffs had standing to bring their claims for money damages, they lack Article III standing to pursue injunctive relief.  *See Friends of the Earth, Inc v.*

*Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought.").

First, the complaint does not allege that Plaintiffs face "a sufficient likelihood that [they] will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Plaintiffs do not allege that they have any current involvement with cocoa production or that they face any current or future risk of trafficking or forced labor. Nor can they base Article III standing to seek injunctive relief on an alleged threat of harm to unnamed putative class members. Named plaintiffs that lack standing to seek injunctive relief for themselves also lack standing to seek injunctive relief on behalf of others. *See Gerlich v. U.S. Dep't of Justice*, 659 F. Supp. 2d 1, 19 (D.D.C. 2009).

Second, Plaintiffs lack standing for their claims of injunctive relief because they cannot satisfy Article III's redressability requirement. "[T]raceability and redressability overlap as two sides of a causation coin." *Exhaustless Inc. v. FAA*, 931 F.3d 1209, 1212 (D.C. Cir. 2019) (quotation marks omitted). And this Court "has denied standing where 'the plaintiff seeks to change the defendant's behavior *only as a means* to alter the conduct of a third party, not before the court, who is the direct source of the plaintiff's injury.'" *Fulani v. Brady*, 935 F.2d 1324, 1330 (D.C. Cir. 1991) (citation omitted). Although Defendants fully support eradicating the labor

conditions described in the complaint, Plaintiffs plead no facts suggesting that enjoining Defendants' conduct would prevent unidentified individuals in Mali or Côte d'Ivoire who are not before this Court from engaging in unlawful labor practices.

## II.    Alternatively, The Complaint Does Not State A Claim For Relief.

Although the district court properly dismissed this case because Plaintiffs lack standing, this Court "may affirm its judgment on any basis supported by the record." *Elec. Privacy Info. Ctr. v. IRS*, 910 F.3d 1232, 1236 (D.C. Cir. 2018); *see also Sierra Club v. Jackson*, 648 F.3d 848, 857 (D.C. Cir. 2011) (affirming dismissal pursuant to Rule 12(b)(1) "because dismissal would otherwise have been proper under Rule 12(b)(6)"). The record here supports dismissal on the ground that the complaint does not state a claim under the Trafficking Act or the common law.

### A.    The Complaint Does Not Adequately Plead That Defendants "Participat[ed] In A Venture" Under The Trafficking Act.

The Trafficking Act imposes criminal and civil liability upon those responsible for "trafficking in persons"—a practice Congress found is "increasingly perpetrated by organized, sophisticated criminal enterprises." 22 U.S.C. § 7101(a), (b)(8). In addition to imposing severe criminal penalties for trafficking, 18 U.S.C. §§ 1581-1592, the Act provides a civil remedy to victims. They may sue "the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." *Id.* § 1595(a).

37

Plaintiffs concede that no Defendant itself perpetrated any violation of the Act.  Open.Br.11.  Therefore, to state a claim, the complaint must plausibly allege that each Defendant "knowingly benefit[ed]" from "participation in a venture" that "engaged in" a violation of the Act, and that each Defendant knew or should have known that the "venture" committed such violations.  It does not.[5]

### 1.    "Participation in a venture" means taking part in a common undertaking involving shared risk and profit.

The Trafficking Act does not define "participation in a venture" for purposes of Section 1595(a).  Thus, the phrase must be interpreted "according to its plain meaning," *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021), beginning with dictionary definitions from "the time of [the statute's] adoption or amendment," *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1537 & n.1 (2021).

The ordinary meaning of "participation" is active involvement with a common purpose; it is "[t]he act of taking part in something, such as a partnership."  *Participation*, Black's Law Dictionary 1141 (7th ed. 1999) ("Black's"); *see also Participa-*

---

[5] In moving to dismiss the complaint, Defendants also argued that the complaint did not plausibly allege that each Defendant knew or should have known about the violations of the Trafficking Act that injured Plaintiffs or that Defendants knowingly benefitted from those violations.  ECF 27-1, at 23–30.  The district court did not reach those issues, and Plaintiffs did not raise them in their opening brief.

*tion*, Am. Heritage Dictionary of the English Lang. 1281 (4th ed. 2000) ("Am. Heritage") ("The act of taking part or sharing in something"). Knowing that something is happening is not enough to establish participation; after all, "observing something is not the same as participating in it." *Red Roof Inns*, 21 F.4th at 727. Nor is mere "assistance" sufficient to establish "participation." "In common parlance, the two terms are not equivalent." *United States v. Papagno*, 639 F.3d 1093, 1098 (D.C. Cir. 2011) (Kavanaugh, J.). For instance, "[e]ngineers who design soldiers' weapons aid the war effort, but the engineers are not thought to participate in the war; rather, they are said to provide support." *Id.*

Likewise, participating "in a venture" requires more than a simple connection to or commercial relationship with another person or entity. A "venture" is a "business enterprise involving some risk in expectation of gain." *Venture*, Am. Heritage 1909; *see also Venture*, Black's 1553 ("An undertaking that involves risk; esp., a speculative commercial enterprise"). This interpretation accords with common uses of the term, such as a "joint venture": "[a] business undertaking by two or more persons engaged in a single defined project" with "a common purpose" and "shared profits and losses." *Joint Venture*, Black's 843.

Thus, as the Eleventh Circuit has held, the venture liability prong of the Trafficking Act "requires" that a defendant "took part in a common undertaking or enterprise involving risk and potential profit." *Red Roof Inns*, 21 F.4th at 725.

Plaintiffs contend that their allegations show that Defendants "were in a 'venture' with their cocoa suppliers" under Section 1595(a).  Open.Br.35.  But they do not even address "participation"; nor do they interpret "venture."

In the district court, Plaintiffs pointed to Section 1591, which defines "venture" for purposes of the Act's criminal prohibition on sex trafficking as "any group of two or more individuals associated in fact."  18 U.S.C. § 1591(e)(6); *see* ECF 33, at 17.  But Section 1591(e) states expressly that its definition applies only "[i]n this section," *i.e.*, in Section 1591.  Thus, "by its plain terms, the definition applies only to the phrase as used in Section 1591," not to the civil-liability provision of Section 1595 at issue here.  *Red Roof Inns*, 21 F.4th at 724; *accord A.B.*, 484 F. Supp. 3d at 937 (collecting cases).  Section 1591(e)'s limitation is "persuasive countervailing evidence that Congress meant to adopt" different meanings in different provisions. *HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 141 S. Ct. 2172, 2177 (2021).  In any event, as explained below, the complaint fails to plead a venture even under Plaintiffs' preferred interpretation of that term.[6]

---

[6] Plaintiffs also argued in the district court that a "venture" requires only an "informal, tacit understanding" and that a defendant could be liable for agreeing "to accept benefits from the venture."  ECF 33, at 18.  That proposed definition reads "participation" out of the statute and would impose liability for every agreement or relationship from which a defendant derives a benefit.  Unsurprisingly, Plaintiffs cited no case supporting that definition; their cited cases instead concerned sex trafficking under Section 1591, holding that "an 'overt act' is not required under" that Section. *E.g.*, *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1062 (D. Colo. 2021).

## 2.    The complaint does not plead a "venture" under the Act.

To plead a "venture," the complaint must plausibly allege a "common under-taking involving risk or profit." *Red Roof Inns*, 21 F.4th at 727.  It does not.

a.  The complaint appears to allege a single, overarching "cocoa supply chain" venture encompassing every person or entity involved in the production, supply, im-portation, and purchase of cocoa originating anywhere in Côte d'Ivoire across a ten-year period.  JA89; *see also* Open.Br.36 (arguing that Plaintiffs were injured by "the cocoa supply chain system").  This limitless theory of venture liability is incompat-ible with the Trafficking Act.  Simply put, "a 'global supply chain' is not a venture." *Doe I v. Apple Inc.*, 2021 WL 5774224, at *10-11 (D.D.C. Nov. 2, 2021), *appeal pending*, No. 21-7135 (D.C. Cir. Dec. 2, 2021).

As Plaintiffs acknowledge, the so-called "cocoa supply chain" consists of thousands of cocoa farmers and "buyers and others [who] interact with the farmers," as well as countless individuals and entities worldwide who are involved in the trans-portation, processing, and sale of cocoa.  JA24, 29, 46.  But the complaint does not allege facts showing that all of those individuals and entities have relationships with one another.  Nor does it allege that everyone who farmed, transported, bought, or sold cocoa has cooperated to share risk or otherwise form a common "undertaking involving risk or profit." *Red Roof Inns*, 21 F.4th at 727.

41

On the contrary, the complaint recognizes that Defendants in many cases directly compete with each other.  JA16-19.  And notwithstanding Plaintiffs' conclusory allegation that Defendants "formed, operate and control a cocoa supply chain 'venture,'" JA89, it is wholly implausible that these rival chocolate companies are in fact the "architects" of a single business enterprise spanning countless unaffiliated and directly competing farmers, buyers, shippers, and others in the "cocoa production system of Côte d'Ivoire," Open.Br.13; *cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 549 (2007) (refusing to credit conclusory allegation that defendants' conduct was the result of illicit "agreement, as distinct from identical, independent action").

Even more implausibly, the complaint attempts to portray the World Cocoa Foundation—an organization of 92 diverse entities, including financial institutions, cocoa processors, chocolate manufacturers, warehousing companies, transportation companies, and retailers, that addresses public policy issues[7]—as a "criminal cartel." JA90.  The complaint contains no facts plausibly suggesting that all of these disparate entities combined to form a single business enterprise, let alone one that supposedly injured Plaintiffs.  *See Chubirko v. Better Bus. Bureau of S. Piedmont, Inc.*, 763 F. Supp. 2d 759, 765 (W.D.N.C. 2011) ("Corralling so many disparate entities into a concerted criminal enterprise would necessitate such organization and cooperation

---

[7] *See* WCF, Our Members, https://www.worldcocoafoundation.org/about-wcf/members/.

as to be practically impossible, let alone implausible.").  Nor do Plaintiffs suggest that the Foundation is directly involved in, or actively facilitates, trafficking or forced labor; instead, they criticize it for not timely achieving its goal of *monitoring and remediating* improper labor practices in the cocoa supply chain.  JA30-31, 98-99.[8]

Treating the members of an industry public policy group as an unlawful trafficking venture because they have attempted to improve a complex and intractable socioeconomic problem would discourage companies from participating in global efforts to combat human rights violations.  Congress did not draft the Trafficking Act to produce such a counterproductive result.  *See Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 1939 (2021) ("Companies or individuals may be less likely to engage in intergovernmental efforts if they fear those activities will subject them to private suits."); *cf. Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1406 (2018) (plurality opinion) (warning that adopting a permissive standard for claims based on foreign human rights violations "might deter the active corporate investment that contributes to the economic development that so often is an essential foundation for human rights").

---

[8] The complaint also alleges that the Foundation is specifically focused on efforts to help address the distinct problem of "*child* labor in the cocoa supply chain."  JA31 (emphasis added).  While Defendants agree that the risk of child labor is a serious global problem and are committed to efforts to help combat all aspects of child labor, the Trafficking Act prohibits only *forced* labor, not non-coerced child labor.  *See* 18 U.S.C. §§ 1589(a), 1590(a).

b.  On appeal, Plaintiffs appear to retreat from the complaint's theory that Defendants participated in a single, overarching "supply chain" venture and instead argue that Defendants "were in a 'venture' with their cocoa suppliers."  Open.Br.35. But that theory cannot salvage Plaintiffs' claim, for multiple reasons.

*First*, as explained above, the complaint does not allege sufficient facts to establish a common commercial enterprise among all Defendants—eight separate companies that often are direct competitors with each other—much less with every company and farm whose cocoa finds its way through numerous intermediaries to Defendants.  Plaintiffs say (at 36) that this supposed "venture" "failed to act beginning in 2001 to prevent children, including [Plaintiffs], from being exploited by [the cocoa supply chain] system."  Even if that were true, the complaint does not identify any facts rendering it plausible that Defendants' purported conduct was the result of a common undertaking, rather than independent action (or inaction).  *Twombly*, 550 U.S. at 549.  And courts have refused to infer a venture under the Trafficking Act based on mere failure to stop trafficking offenses.  *See A.D. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 8674205, at *5 (E.D. Va. July 22, 2020) ("general failure to adequately educate and train staff, adopt policies, and implement protocols and procedures" insufficient to establish a "trafficking venture").

*Second*, even if the complaint had adequately alleged a venture among all Defendants and all of their cocoa suppliers, it *still* would not include Plaintiffs' alleged

traffickers or the farmers who allegedly forced them to work. Venture liability under the Trafficking Act applies only when the "venture . . . has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). Thus, there must be plausible allegations that the defendant benefitted "financially from participation in a 'venture' *with the primary offender*," or else there would be no claim that the venture engaged in the violation. *Bistline v. Parker*, 918 F.3d 849, 871 (10th Cir. 2019) (emphasis added). But the complaint alleges no facts connecting Defendants or their specific cocoa suppliers with the primary offenders that injured Plaintiffs—*i.e.*, the individuals who allegedly trafficked Plaintiffs or forced them to work. As the district court noted, it does not plausibly allege even that Defendants ultimately purchased cocoa originating on any farm where Plaintiffs worked. JA116.

The Eleventh Circuit recently held that similar allegations failed to state a claim in *Red Roof Inns*. There, sex-trafficking victims brought claims under Section 1595(a) against franchisors of the hotels at which they were trafficked. 21 F.4th at 725. The Eleventh Circuit affirmed the dismissal of the plaintiffs' claims. Plaintiffs in that case did "nothing to show . . . a common undertaking involving risk or profit that violated the [Trafficking Act]—*i.e.*, the alleged sex trafficking ventures." *Id.* at 727. Among other deficiencies, there were no allegations that the franchisors cooperated with the sex traffickers; the franchisors were, at most, generally aware that their properties had been used for sex trafficking in the past. *Id.* For much the same

reason, Plaintiffs have failed to plead the existence of a "venture" here, notwith-standing their general allegations that Defendants indirectly profited from forced la-bor merely by purchasing cocoa. *See id.* at 726-27 (general allegations that "fran-chisors financially benefitted from renting hotel rooms to the Does' sex traffickers" are insufficient to establish a "venture").

c. Finally, the complaint does not adequately allege a "venture" even under Plaintiffs' proposed standard. Under Section 1591(e)(6), which Plaintiffs would im-properly import into Section 1595, *see supra* 40, a venture requires "individuals as-sociated in fact." 18 U.S.C. § 1591(e)(6). The established meaning of "associated in fact"—as used in the definition of "enterprise" under RICO, *id.* § 1961(4)—is "a group of persons associated together for a common purpose of engaging in a course of conduct," *Boyle v. United States*, 556 U.S. 938, 946 (2009). And, directly relevant here, courts addressing RICO claims "have overwhelmingly rejected attempts to characterize routine commercial relationships" as an "associat[ion] in fact." *Shaw v. Nissan N. Am.*, 220 F. Supp. 3d 1046, 1053-54 (C.D. Cal. 2016); *see, e.g.*, *Zamora v. FIT Int'l Grp.*, 834 F. App'x 622, 625 (2d Cir. 2020) (no association-in-fact; "rou-tine contractual combination for the provision of financial services"); *UFCW Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 855-56 (7th Cir. 2013) (no association-in-fact; "commercial transaction[s] between a drug

manufacturer and pharmacy"). Under this standard, Plaintiffs cannot rely on Defendants' cocoa purchasing arrangements with their suppliers to support venture liability. And, as explained above, the complaint does not plausibly allege *any* association between any Defendant and the individuals who perpetrated Trafficking Act violations against any Plaintiff.

### 3. The complaint does not allege that Defendants "participated" in a venture.

Even if Plaintiffs had plausibly alleged the existence of a venture, their Trafficking Act claims would still fail because Plaintiffs have not adequately alleged that Defendants "participat[ed]" in that venture, for two independent reasons.

a. Plaintiffs' central contention is that Defendants "participat[ed]" in the alleged "supply chain" venture merely by making purchases of cocoa from Côte d'Ivoire. As this Court made clear in *Papagno*, however, merely purchasing a product does not constitute "participation" in a business venture that produces and sells that product. *See* 639 F.3d at 1098 ("A health insurance company may pay for a patient's operation, but the insurer does not participate in the operation at the hospital."); *see also Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 710 (5th Cir. 2017) (bank's secondary market purchase of mortgages does not constitute "'participation' whatsoever in [a co-defendant's] decision to extend credit to any of its applicants").

Cases like *Red Roof Inns* confirm that ordinary commercial dealings with an individual or entity do not amount to "participation" in a venture with that individual or entity within the meaning of the Trafficking Act. *See* 21 F.4th at 727 (hotel-franchisor defendants did not "participat[e]" in venture merely because "the franchisors financially benefitted from renting hotel rooms to the . . . sex traffickers").

Thus, even if Defendants allegedly bought cocoa that may have at some point been harvested or handled by unwilling laborers, that would not mean that Defendants themselves "participat[ed]" in a venture with their ultimate cocoa suppliers in Côte d'Ivoire. Here, the complaint does not adequately allege even that much. At most, it alleges that some (but not all) Defendants sourced cocoa from "areas" of Côte d'Ivoire where some (but not all) Plaintiffs were allegedly forced to work. It does not allege that Defendants actually bought anything from the farmers who subjected Plaintiffs to forced labor (much less the individuals who trafficked them to those farms). In fact, the complaint acknowledges the significant possibility that Defendants have absolutely no commercial dealings—even indirect—with anyone who trafficked Plaintiffs. *See* JA95 (suggesting only that it is statistically possible that cocoa harvested by Plaintiffs eventually ended up in the hands of one or more of the Defendants).

Unable to show that Defendants "participat[ed] in a venture" by virtue of their purchases of cocoa, Plaintiffs attempt to redefine "participation" as "assistance."

*See*, *e.g.*, JA24, 91.  They argue that "financial and technical support" allegedly provided by unspecified Defendants to unnamed farmers in Côte d'Ivoire amounts to "participation" in a venture.  JA92.  But "participation" and "assistance" are simply "not equivalent."  *Papagno*, 639 F.3d at 1098.  Participation has a "narrower meaning" than "assistance" and does not encompass "all assistance rendered by words, acts, encouragement, support, or presence."  *Reves v. Ernst & Young*, 507 U.S. 170, 178-79 (1993).  Thus, "[t]he company that provides electricity to power the sound system at [this Court's] oral arguments assists the proceedings, but its employees are not ordinarily said to have participated in the oral argument."  *Papagno*, 639 F.3d at 1098.  Likewise, the complaint's vague reference to Defendants providing "financial and technical support" to unnamed farmers—who, in any event, are also not plausibly alleged to have perpetrated violations of the Trafficking Act—does not amount to Defendants' "participation" in a "cocoa supply chain" venture in Côte d'Ivoire. JA89, 92.

b.  Plaintiffs also fail to allege that Defendants participated in any trafficking and forced labor offenses, much less the particular offenses alleged in the complaint. In *United States v. Afyare*, the Sixth Circuit held that defendants "participat[e] in a venture" within the meaning of the Trafficking Act only when they "engage in [human] trafficking [or forced labor] together" or "associat[e] for the purpose of furthering the [human] trafficking" or forced labor.  632 F. App'x 272, 286 (6th Cir.

49

2016).  Here, the complaint fails to allege either that Defendants "participat[ed]" in any way in the underlying trafficking and forced labor violations alleged in the Complaint, or that Defendants have made any other affirmative efforts to perpetuate forced labor in Côte d'Ivoire.

To the contrary, Plaintiffs concede that Defendants "do not directly participate in trafficking the victims or forcing them to work."  Open.Br.11.  Plaintiffs instead accuse Defendants of being "indifferent" or "willful[ly] blin[d]" to human trafficking.  JA42, 89.  But "observing something is not the same as participating in it," *Red Roof Inns*, 21 F.4th at 727; nor does alleged indifference constitute "participation," *Afyare*, 632 F. App'x at 286.  And the complaint makes clear that Defendants are *not* indifferent:  It alleges that Defendants have established clear policies prohibiting their suppliers from using child labor and documents their efforts to eradicate such labor from their supply chain.  *See*, *e.g.*, JA45, 49-50, 68.  But even if they were, "fail[ing] to act," Open.Br.36, is the opposite of "participation," and nothing in the Trafficking Act suggests that courts may impose liability based on a defendant's supposed failure to meet its *voluntary* commitment to combatting troubling labor practices in its supply chain.[9]

_____

[9] As discussed above, this Court should reject Plaintiffs' misguided effort to characterize Defendants' membership in the World Cocoa Foundation—a 92-member international organization that seeks to *combat* child labor in Côte d'Ivoire—as tantamount to "participation in a venture" within the meaning of the Trafficking Act.

**B.    The Trafficking Act's Civil Cause Of Action Does Not Apply Extraterritorially.**

Plaintiffs' Trafficking Act claim independently fails because the Act's civil cause of action, 18 U.S.C. § 1595, does not apply extraterritorially.  To rebut the presumption against extraterritoriality, the statute must provide "a clear, affirmative indication that it applies extraterritorially." *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 337 (2016).  If it does not, the claim can proceed only if it "involves a domestic application of the statute." *Id.*  Neither step is satisfied here.

*First*, the Trafficking Act does not clearly indicate that Section 1595 applies extraterritorially.  "On its face," Section 1595 "says nothing about extraterritorial application." *Apple*, 2021 WL 5774224 at *14.  And although Section 1596 expressly extends extraterritorial jurisdiction over six *criminal* provisions, it "does not mention" the Act's *civil* provision, Section 1595. *Id.* at *15.  "[T]he text and structure of § 1596" confirm that criminal focus; Section 1596 repeatedly refers to "prosecutions" and "offenses," which carry criminal connotations. *Id.*; *see Kellogg Brown & Root Servs. v. United States ex rel. Carter*, 575 U.S. 650, 658 (2015).

That Section 1596 extends certain criminal prohibitions extraterritorially does not show that Section 1595 applies extraterritorially:  "It is not enough to say that a private right of action must reach abroad because the underlying law governs conduct in foreign countries.  Something more is needed" to demonstrate that Congress extended a civil cause of action extraterritorially. *RJR Nabisco*, 579 U.S. at 350.

51

Here, that "[s]omething more . . . is absent." *Id.* Where, as here, "a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." *Id.* at 339.

*Second*, the focus of Section 1595 is where the underlying criminal violation occurred. *See Morrison v. Nat'l Australia Bank*, 561 U.S. 247 (2010). *Morrison* involved a statute regulating "deceptive conduct 'in connection with'" certain transactions. *Id.* at 266 (quoting 15 U.S.C. § 78j(b)). Because those transactions "are the objects of the statute's solicitude," the Supreme Court held the statute's focus was where those transactions occurred—not "where the deception originated." *Id.* at 266-67. Likewise, Section 1595's focus is where the underlying criminal violation occurred—not where the civil defendant purportedly benefitted from that underlying violation. *Apple*, 2021 WL 5774224, at *16. Because the complaint alleges that Plaintiffs' injuries and the underlying substantive violations occurred abroad, their claims are impermissibly extraterritorial.

## C.    The Complaint Does Not Adequately Plead Its Common Law Claims.

In addition to the Trafficking Act claim, the complaint also includes common-law causes of action for unjust enrichment, negligent supervision, and intentional infliction of emotional distress. JA100-104. Apart from one sentence in the opening paragraph, Plaintiffs' brief does not address Article III standing with respect to those common law claims. *See* Open.Br.1. And their venture-based standing argument

applies only to their claims under the Act. As a result, Plaintiffs have forfeited any argument regarding their common-law claims; this Court should affirm the dismissal of those claims on that basis alone. *See Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) ("A party forfeits an argument by failing to raise it in [its] opening brief.").

But even if the Court were to conclude that Article III's requirements are satisfied with respect to the common-law claims, it should nonetheless affirm because Plaintiffs' claims are barred by the statute of limitations and fail on the merits.

The common-law claims are barred by the District of Columbia's three-year statute of limitations period, D.C. Code § 12-301(8); *see Steorts v. Am. Airlines, Inc.*, 647 F.2d 194, 197 (D.C. Cir. 1981) (forum law governs statute of limitations), which began to run no later than the last date on which Plaintiffs allegedly worked on the cocoa farms, *see News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1225 (D.C. 2005) (unjust enrichment); *Henao v. Smiths Detection, Inc.*, 2019 WL 2476631, at *3 (D.D.C. June 13, 2019) (negligence); *White v. Wash. Intern Student Hous.*, 2019 WL 1858298, at *11 (D.D.C. Apr. 25, 2019) (intentional infliction of emotional distress). Accordingly, Plaintiffs could bring these claims only if they last worked on the cocoa farms no more than three years before February 12, 2021—the date when they filed their initial complaint. But the dated allegations in the com-

plaint are all much earlier, JA72, 78, 81-86, or the complaint fails to plead the material dates when the Plaintiffs stopped working, JA73-77. Plaintiffs' common-law claims are therefore time-barred.

Each of the common-law claims is also subject to dismissal on the merits. *First*, Plaintiffs do not state a claim for unjust enrichment because there are no plausible allegations that any Defendant benefited from *Plaintiffs'* forced labor. An unjust-enrichment claim requires a showing that "(1) the *plaintiff* conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *News World Commc'ns*, 878 A.2d at 1222 (emphasis added).

Plaintiffs identify just one alleged "benefit" that Defendants supposedly get from forced labor: cheaper cocoa. JA19. But the "remote and speculative" causal chain between Plaintiffs' own forced labor and the market price of cocoa cannot "support an unjust enrichment claim." *Aston v. Johnson & Johnson*, 248 F. Supp. 3d 43, 56 (D.D.C. 2017). *Aston* dismissed unjust-enrichment claims against a drug company's minority shareholders, finding that even if they "earned profits" from the defective-drug sales, the profits were an "indirect benefit" too "attenuated" to support an unjust-enrichment claim. *Id.* Plaintiffs' claim is even more attenuated. Unlike the minority shareholders in *Aston*, who had a clear economic relationship with the defendant drug company, Plaintiffs do not plausibly allege that the individuals

who trafficked them and compelled them to work had *any* relationship with any De-
fendant.

    *Second*, Plaintiffs have not stated a claim for negligent supervision because
they do not allege that they worked for Defendants' employees.  A successful negli-
gent-supervision claim requires a showing that an "employer knew or should have
known its employee behaved in a dangerous or otherwise incompetent manner, and
that the employer . . . failed to adequately supervise the employee."  *Paavola v.
United States*, 459 F. Supp. 3d 21, 40 (D.D.C. 2020) (quotation marks omitted).  But
Plaintiffs do not claim that they worked for any Defendant or any Defendant's em-
ployees.  The complaint tries to circumvent this critical omission by alleging that the
"plantation owners who supplied the Defendants with cocoa were agents of Defend-
ants."  JA101.  But "[t]he existence of an agency relationship is a legal conclusion,
which the court need not accept unless it is supported by factual allegations," and
Plaintiffs make none.  *Slinski v. Bank of Am., N.A.*, 981 F. Supp. 2d 19, 31 (D.D.C.
2013); *see also* JA117 n.2.

    *Third*, Plaintiffs have not stated a claim for intentional infliction of emotional
distress because they do not allege that *Defendants*' conduct was extreme or outra-
geous.  For their claim to survive, Plaintiffs must show:  "(1) extreme and outrageous
conduct on the part of the defendant which (2) intentionally or recklessly (3) causes
the plaintiff to suffer severe emotional distress."  *Paavola*, 459 F. Supp. 3d at 41

(cleaned up).  This conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Wood v. Neuman*, 979 A.2d 64, 77 (D.C. 2009) (quotation marks omitted).

Plaintiffs have not alleged that *Defendants* engaged in any outrageous conduct.  They point out that Defendants have participated in ordinary business activities like importing cocoa into the United States and stationing managers and buyers in Côte d'Ivoire.  JA23, 31.  But no court has held that such conduct is "utterly intolerable," and for good reason:  If the mere purchase and importation of a product made by trafficked laborers qualified as extreme and outrageous, then any company or even consumer could be sued for intentional infliction of emotional distress simply by virtue of purchasing foreign-made shoes, technology, food, and other popular goods rumored to have been produced through forced or trafficked labor.  None of the alleged conduct rises to the level of egregiousness required to state a claim for intentional infliction of emotional distress against Defendants.

56

## CONCLUSION

This Court should affirm the district court's judgment.

January 13, 2023                                   Respectfully submitted,

John E. Hall                                       /s/ Theodore J. Boutrous Jr.
Henry Liu                                          Theodore J. Boutrous Jr.
David M. Zionts                                    Perlette Michèle Jura
John A. Boeglin                                    GIBSON, DUNN & CRUTCHER LLP
COVINGTON & BURLING LLP                            333 South Grand Avenue
One CityCenter                                     Los Angeles, CA 90071
850 10th Street, NW                                (213) 229-7000
Washington, DC 20001                               tboutrous@gibsondunn.com
(202) 662-6000
                                                   Jacob T. Spencer
Emily Johnson Henn                                 GIBSON, DUNN & CRUTCHER LLP
COVINGTON & BURLING LLP                            1050 Connecticut Avenue, NW
3000 El Camino Real                                Washington, DC 20036
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306                                *Counsel for Nestlé USA, Inc.*

*Counsel for Barry Callebaut USA*                  David Forkner
                                                   WILLIAMS & CONNOLLY LLP
Andrew J. Pincus                                   680 Maine Ave., SW
Carmen Longoria-Green                              Washington, DC 20024
MAYER BROWN LLP                                    (202) 434-5000
1999 K Street, NW
Washington, DC 20006                               *Counsel for Mars, Incorporated and*
(202) 263-3000                                     *Mars Wrigley Confectionary US, LLC*

*Counsel for Cargill, Incorporated and*            Craig A. Hoover
*Cargill Cocoa*                                    David M. Foster
                                                   Danielle Desaulniers Stempel
Daniel S. Ruzumna                                  HOGAN LOVELLS US LLP
Steven A. Zalesin                                  555 Thirteenth Street, NW
Jonah M. Knobler                                   Washington, DC 20004
PATTERSON BELKNAP WEBB & TYLER LLP                 (202) 637-5694
1133 Avenue of the Americas
New York, NY 10036                                 *Counsel for Mondelēz International, Inc.*
(212) 336-2000

*Counsel for The Hershey Company*

57

Paul C. Rosenthal
KELLEY DRYE & WARREN LLP
3050 K Street N.W., Suite 400
Washington, DC  20007
(202) 342-8400

Lauri A. Mazzuchetti
KELLEY DRYE & WARREN LLP
One Jefferson Road
Parsippany, NJ  07054

*Counsel for Olam Americas LLC*
*(f/k/a Olam Americas, Inc.)*

## CERTIFICATE OF COMPLIANCE

The brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) and D.C. Cir. R. 28(c) because this brief contains 12,992 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

*/s/ Theodore J. Boutrous Jr.*
Theodore J. Boutrous Jr.
GIBSON, DUNN & CRUTCHER LLP

*Counsel for Nestlé USA, Inc.*

# ADDENDUM

# ADDENDUM OF PERTINENT STATUTES

**Page**

18 U.S.C. § 1589 ................................................................Add. 1

18 U.S.C. § 1590 ................................................................Add. 2

18 U.S.C. § 1595 ................................................................Add. 2

18 U.S.C. § 1596 ................................................................Add. 3

**18 U.S.C. § 1589.  Forced labor**

(a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,

shall be punished as provided under subsection (d).

(b) Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

(c) In this section:

(1) The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

(2) The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

(d) Whoever violates this section shall be fined under this title, imprisoned not more than 20 years, or both. If death results from a violation of this section, or if the violation includes kidnaping, an attempt to kidnap, aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title, imprisoned for any term of years or life, or both.

Add. 1

## 18 U.S.C. § 1590.  Trafficking with respect to peonage, slavery, involuntary servitude, or forced labor

(a) Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both. If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse, or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both.

(b) Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be subject to the penalties under subsection (a).

## 18 U.S.C. § 1595.  Civil remedy

(a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

(b)(1) Any civil action filed under this section shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim.

(2) In this subsection, a "criminal action" includes investigation and prosecution and is pending until final adjudication in the trial court.

(c) No action may be maintained under subsection (a) unless it is commenced not later than the later of—

(1) 10 years after the cause of action arose; or

(2) 10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense.

* * *

**18 U.S.C. § 1596.  Additional jurisdiction in certain trafficking offenses**

(a) IN GENERAL.— In addition to any domestic or extra-territorial jurisdiction otherwise provided by law, the courts of the United States have extra-territorial jurisdiction over any offense (or any attempt or conspiracy to commit an offense) under section 1581, 1583, 1584, 1589, 1590, or 1591 if—

(1) an alleged offender is a national of the United States or an alien lawfully admitted for permanent residence (as those terms are defined in section 101 of the Immigration and Nationality Act (8 U.S.C. 1101)); or

(2) an alleged offender is present in the United States, irrespective of the nationality of the alleged offender.

(b) LIMITATION ON PROSECUTIONS OF OFFENSES PROSECUTED IN OTHER COUNTRIES.—No prosecution may be commenced against a person under this section if a foreign government, in accordance with jurisdiction recognized by the United States, has prosecuted or is prosecuting such person for the conduct constituting such offense, except upon the approval of the Attorney General or the Deputy Attorney General (or a person acting in either such capacity), which function of approval may not be delegated.